LOUISE BUTLER v. WM. BUTLER AND MARY A. AUSTIN.

1. ACTION BY WIFE TO SET ASIDE ANTE-NUPTIAL CONVEYANCE BY HER HUSBAND. In February, 1873, B., a widower, residing in Kansas, corresponded with L., a widow, residing in Indiana, with a view to marriage. In such correspondence he represented that he owned two good farms in Johnson county. In April, 1873, he executed a voluntary conveyance of the farms to two minor children of his by his first wife, then residing with him. In May, 1873, he visited Indiana, and there became engaged to L., and in August, 1873, they were married. The deed was not recorded until five days after the marriage, and L. knew nothing of its existence until some years thereafter. After the marriage they lived together as husband and wife, and he made ample provision for her support, as well as the support of her two children by her former husband. No evidence was given of the amount of B.'s property at the time of said conveyance, or since. *Held,* That a judgment against her in an action to set aside such conveyance as a fraud upon her marital rights, was not, under the circumstances, erroneous, and must be affirmed.

2. ———— *Quœre.* Would any voluntary ante-nuptial conveyance, by either husband or wife, be, under the laws of Kansas, a fraud upon the marital rights of the other party?

### Error from Johnson District Court.

ACTION brought by *Louise Butler* against her husband, *William Butler,* and his daughter, by a former wife, *Mary A. Austin,* formerly Mary A. Butler, to set aside a conveyance made by her husband to his daughter, shortly prior to her own marriage, and in fraud, as she claimed, of her marital rights. The facts are sufficiently set forth in the opinion. At the March Term, 1878, of the district court, the defendants recovered a judgment for costs against the plaintiff, *Louise Butler,* who complains thereat, and brings the case to this court for review.

*A. Smith Devenney,* for plaintiff in error:

We apprehend there can be no question as to the making and delivering of the deed to the children for the purpose of defrauding the plaintiff; that is evident from the testimony of James M. Butler, one of the fraudulent grantees. The

deed was made by the intended husband in derogation of the "property rights" of his intended wife, and made without notice to her. The *secresy* of the proceeding by the grantor and the grantees, although the deed was recorded on the fifth day after the marriage, is a material element from which the court will infer fraud and fraudulent intent. Besides, the grantees had notice of the purpose and design of the grantor. The plaintiff was kept in ignorance of the execution, delivery and recording of the deed until the 10th day of August, 1876. Such deed ought to be set aside by the court. (*St. George v. Wake,* 1 Myl. & C. 618, 629; *Countess, &c., v. Bowes,* 1 Vesey, Jr., 28; *England v. Downes,* 2 Beavan, 522; *Howard v. Hooker,* 2 Ch. Rep. 81; *Lance v. Norman,* 2 Cases in Ch. Rep. 79; *Carleton v. Earl of Dorset,* 2 Vernon, 17; *Goddard v. Snow,* 1 Russell, 485; Macqueen's Husband & Wife, p. 36; Schouler's Domestic Relations, marg. p. 269; Bright's Husband & Wife, ch. 13, p. 221.)

Such general doctrine has been repeatedly held and declared by the courts of this country; *i. e.,* secret and voluntary conveyances, made by a female contemplating marriage, may be set aside on the husband's subsequent application, as a fraud upon his marital rights. 2 Kent Com. 174–5, and notes, last edition; *Spencer v. Spencer,* 3 Jones Eq. 404; *Terry v. Hopkins,* 1 Hill Ch. 1; *Williams v. Carle,* 2 Stockton (N. J.), 543; *Freeman v. Hartman,* 45 Ill. 57; *Belt v. Ferguson,* 3 Grant (Pa.), 289; *Duncan's Appeal,* 43 Penn. St. 67; *Fletcher v. Ashley,* 6 Grattan (Va.), 332; Schouler's Domestic Relations, marg. pp. 270, 271; 3 Iredell Eq. 388, 544.)

A corresponding rule as to fraud would doubtless apply to a man who before marriage had made a secret transfer of his own property to his wife's injury, in disregard of her marital rights. As sustaining this view, see *Leach v. Duvall,* 8 Bush. (Ky.) 201; *Gainor v. Gainor,* 26 Iowa, 337; *Kline v. Kline,* 57 Penn. St. 120; *Kline's Estate,* 64 Penn. St. 122; *Dearmon v. Dearmon,* 10 Ind. 161; 1 Leading Cases in Equity, 444, notes, etc.; *Chandler v. Hollingsworth,* Am. Law Reg., May, 1878.)

While it may be and undoubtedly is true that plaintiff in error did not marry Mr. Butler solely and wholly for *love*, but, to use her own expression, (when the question was put to her "whether she married him for love or his property,") it was "a mixture"—*i. e.*, a little of both—yet it is evident that she had some expectations that she should share his real property in case she survived him. And the conveyance being made just before marriage and for the purposes indicated, she is necessarily disappointed in her expectations and now entitled to relief. *Chambers v. Crabbe*, 34 Beavan, 457; *Ramsey v. Joyce*, 1 McMullan's Ch. 236; *Black v. Jones*, 1 A. K. Marsh. (Ky.) 312; *Manes v. Durant*, 2 Rich. Eq. 404; *Linker v. Smith*, 4 Wash. Ct. Ct. 224; 1 Story's Eq., § 273 (and note 1); 2 Stockton (N. J. Ch.), 551; 1 Shepley (Me.), 125.

*John P. St. John*, for defendant in error Mary A. Austin.

The opinion of the court was delivered by

BREWER, J.: This was an action brought by the plaintiff, Louise Butler, against her husband, William Butler, and his daughter, by a former wife, Mary A. Austin, *nee* Mary A. Butler, to set aside a conveyance made by her husband to his daughter shortly prior to her own marriage, and in fraud, as she claimed, of her marital rights. The facts as they appear are, that in February, 1873, plaintiff was a widow living in Indiana, and defendant, William Butler, a widower living in Kansas. At that time, in correspondence between them, he represented to her that he was the owner of two good farms in Kansas, and some personal property. This correspondence was had with a view to marriage, though the parties were not engaged to be married until the month of May, 1873, when he visited Indiana and remained there for about a month. April 16th, 1873, prior to his departure from Kansas, he executed a deed for these farms to his two minor children then living at home with him. He said to them at the time that he was going to Indiana in a few days to get married,

and in case the marriage did not turn out all right, he wanted them provided for. The deed was a gift, nothing being paid by them for the land. August 13, 1873, pursuant to the engagement in the month of May prior, Mr. and Mrs. Butler were married, and since then have been residing on one of the farms. The deed was recorded August 18, 1873. Mrs. Butler had no knowledge of this conveyance until long after the marriage. When one of the minors became of age he deeded back to his father the undivided half of this property, receiving in exchange a mortgage thereon for fifteen hundred dollars, payable when the property was sold, or Mr. Butler died. And this action is brought to set aside the conveyance so far as the other minor is concerned. It appears from the testimony that the plaintiff was possessed of but little means at the time of the marriage, but there is nothing showing the extent of Mr. Butler's property. For anything in the records, these farms in Johnson county may have been but a small part of his estate. He made no defense to the action, and the litigation was between the wife and the minor daughter, then herself married. It appears also that Mrs. Butler has, during her present marriage, been well provided for by her husband. Indeed, she makes no complaint in this respect. No brief has been filed for the defendant in error, so we cannot say positively upon what ground the district court decided against the plaintiff; but upon the facts as above stated, we think the judgment was properly entered in favor of the defendant and against Mrs. Butler.

It is doubtless true that at common law it was the disposition of courts to hold that a voluntary conveyance of all her property by a woman engaged to be married, made without the knowledge of her intended husband, was a fraud upon his marital rights, and might after the marriage be avoided by him. See in support of this view, the valuable list of authorities in brief of counsel for plaintiff in error. Whether the same rule obtained, when the husband just before marriage made such a conveyance of his property, is not so clear. See 1 Bright's Husband and Wife, p. 356;

1 Leading Cases in Equity, White and Tudor's notes, p. 618.

The reason for the supposed difference in the rule grew out of the different rights each acquired in the property of the other, and the different obligations assumed by each to and for the other by that relation. We deem it unnecessary to enter into any discussion of these matters, for the constant tendency has been to do away with these differences, and give to each the same rights in the property of the other. Of course, when each acquires by marriage the same rights in the property of the other, and is under the same obligations to and for the other, then that which would be a fraud if done by one will under the same circumstances be a fraud if done by the other.

It will also be conceded that the course of decision in this country has been in favor of the general proposition, that a voluntary conveyance by either party to a marriage contract of his or her entire property, made without the knowledge of the other and just prior to the marriage, is a fraud upon the marital rights of such other. See, among other authorities, *Swain v. Perine*, 5 Johns. Ch. 482; *Smith v. Smith*, 2 Halsted's Ch. 515; *Petty v. Petty*, 4 Ben. Monroe, 217; *Leach v. Duvall*, 8 Bush. 201; *Duncan's Appeal*, 43 Penn. St. 67; *Kline v. Kline*, 57 Penn. St. 120; *Logan v. Simmons*, 3 Iredell's Eq. 487.

It may be doubted whether such is the law in Kansas to-day. The writer of this opinion is strongly inclined to believe that it is not. It is a familiar maxim, that where the reason for a rule fails, the rule itself ceases. Now, at common law the husband by marriage assumed responsibility for all his wife's debts, became also the owner of her personal property, and entitled to the use, rents, and profits of her real estate. Marriage therefore contemplated on his part both the assumption of responsibility and the acquisition of property. The fact that the wife acquired no present interest in any of her husband's property, and only the inchoate interest of dower in his real estate, and assumed no responsi-

bility for his obligations, occasioned the doubt whether the husband's ante-nuptial conveyance was, under any circumstances, a fraud upon the wife. Under our law, marriage involves neither the assumption of indebtedness nor the acquisition of property. Neither the title nor the possession or control of any property, real or personal, is changed by marriage, nor does either husband or wife become responsible for the antecedent debts of the other. How can it be said that a woman who the day before marriage gives away ten thousand dollars of personal property, her entire estate it may be, has in any sense of the term defrauded her intended husband, when if she had not given it away the day before she could the day after the marriage, in spite of his objection and beyond the possibility of his restraint? It remains hers after as it was hers before marriage, with the absolute right of disposal. And the same is true in respect to the husband's personalty. As to the realty, the proposition it is true is not quite so broad. Marriage works no change in the title, the use, or the control of it. The husband is not entitled to the possession of his wife's real estate, nor to the rents and profits, and the estates of dower and by courtesy are abolished. True, in lieu thereof each is entitled upon the death of the other to a half of all the real estate owned by the deceased during the marriage, and which has not been sold on judicial sale and is not necessary for the payment of debts, and of which the survivor has made no conveyance; so that there is an inchoate interest to the extent of one-half given to each party in the real estate of the other.

But is this inchoate interest, which may never ripen into a complete title, and which is subject to be defeated during marriage by judicial sale and thereafter by the payment of debts, such an interest as will justify a court in pronouncing fraudulent and void the ante-nuptial voluntary conveyance of either husband or wife?

But it is not necessary to decide this question, and the court declines to express any opinion thereon. Conceding the law to be in accord with the general proposition as first

stated, still, upon the facts in this case, the judgment will have to be affirmed, and for several reasons:

The conveyance was made prior to any contract for marriage; and so far as the findings of fact by the court show, it was prior to any thought of marriage. True, it appears from the testimony that the representations to Mrs. Butler and the conveyance were both made during courtship and in view of marriage; but still the fact is undisputed, that the conveyance was made some weeks before any actual agreement to marry was entered into. Would it have been held, even at the common law, that a conveyance before any contract to marry was a fraud upon marital rights? (*England v. Downs*, 2 Beavan, 522.)

Again, the conveyance was meritorious, and to those having claims upon the grantor. It was to his minor children, and as a provision for them. Surely, the duty of a father to his minor children by a deceased wife is as great as that to a woman he is hoping to wed. It was not an absolute rule that an ante-nuptial voluntary conveyance was fraudulent and void. In Schouler's Dom. Rel., p. 270, it is said:

"From the decisions, it would appear that some alienations of the wife's property without her intended husband's knowledge will be allowed to stand. The facts are always open to inquiry, and it seems settled that the court is warranted in considering such circumstances as the meritorious object of the conveyance and the situation of the husband in point of pecuniary means."

Lord Thurlow held that such a conveyance, being made by the absolute owner of the property, was *prima facie* good, and that facts and circumstances must be shown, indicating an intention to deprive the husband of that which he might rightfully and reasonably expect to obtain by the marriage, before it could be adjudged fraudulent and void. (*Strathmore v. Bowes*, 1 Vesey, Jr., 22.)

Chancellor Kent, in his Commentary, vol. 2, p. 175, says: "If the settlement be upon children of a former husband, and there be no imposition practiced upon the husband, the settlement would be valid without notice," citing *King v. Cot-*

*ton,* 2 P. Wms. 674; *Jones v. Cole,* 2 Bailey S. C. Rep. 330. See also, *Lyles v. Lyles,* Harper's Eq. 288. And this is right and reasonable. The intent of Mr. Butler in this conveyance was not to defraud the future Mrs. Butler. That was not the purpose which prompted the act. It was done with no hostility to her, no desire to wrong her, nor from any thought of mere personal gain, but from a desire to protect those too young to guard their own interests, and whose interests it was his duty to protect. Perhaps this property had been bought with money belonging to their mother, or if not, it may have been the accumulation of the joint industry and saving of their mother and himself, and it was fitting that the title should be passed to them before he contracted any new matrimonial alliance. Certainly it would seem a misnomer to call such a transaction fraudulent.

And again, it is not shown what property he had at the time of the conveyance. If possessed of large estate, a voluntary conveyance of a small portion thereof to a stranger even, and made after the contract for marriage had been entered into, would scarcely be fraudulent. If he retained that which would be ample provision for the support of himself and wife and family, a gift to a stranger would be no fraud upon her marital rights. Surely a contract to marry does not debar a man from all control of his property, or tie up his estate like an order of court.

For these reasons, we think the judgment of the district court was properly entered in favor of the defendants, and it must be affirmed.

All the Justices concurring.