No. 15,642.

ALKIRE v. ALKIRE ET AL.

DEMURRER.—*Demurrer to Answer Searches the Record and Raises Sufficiency of Complaint.—Rule as to Cross-Complaint.*—A demurrer to an answer searches the record and reaches back to the complaint, whether the complaint was objected to or not; and an exception by the plaintiff to the overruling of the demurrer to the answer raises the inquiry as to the sufficiency of the complaint, and the same rule applies to a cross-complaint and answer thereto.

PLEADING.—*Bad Answer to Bad Complaint.—Overruling Demurrer to Answer.—Not Error.*—A bad answer is good enough for a bad complaint, and where this state of facts exists, it is not error to overrule a demurrer to such answer.

FRAUDULENT CONVEYANCE.—*Conveyance by Father to Children.—Consideration Natural Love and Affection.—When in Fraud of Prospective Second Wife.—When Not.*—Where one contemplates a second marriage, having children by a former wife, and having made no representations as to his property for the purpose of inducing his prospective wife to enter into a marriage contract with him, and having made no contract with her in relation thereto, the fact that he makes a reasonable provision for his children in proportion to his estate, retaining sufficient property to afford him and his second wife a reasonable support, and sufficient to afford her a reasonable maintenance after his death, should she survive him, does not make such transaction fraudulent as to such wife, although she was not advised as to such transaction, and did not give her consent thereto. But, if representations were made as an inducement for the wife to enter into the contract, or if agreements with the wife were violated, or conveyances made on the eve of marriage under certain circumstances so as to operate as fraud, a conveyance under such conditions would be set aside, and the wife granted her interest in the estate.

SAME.—*In Fraud of Wife.—Action to Set Aside.—Necessary Allegations in Complaint.—Marriage Contract.*—A complaint by a wife to set aside a conveyance as fraudulent, being made by her husband during their contract of marriage and previous to its consummation, is insufficient which does not allege, that she would not have entered into the contract or consummated the marriage, had she known that he had conveyed the land previous thereto; that it did not leave the husband possessed of sufficient property to afford the wife all of the financial advantages she contemplated by reason of the marriage.

From the White Circuit Court.

*W. H. Bryan, J. R. Coffroth, W. R. Coffroth, R. Gregory* and *W. R. Wood,* for appellant.

*E. B. Sellers* and *W. E. Uhl,* for appellees.

OLDS, J.—On the 8th of July, 1889, the appellees, William, Isaac, and Robert Alkire, filed their petition in the White Circuit Court against the appellant, asking partition of certain lands, over 900 acres, of which Forgus Alkire had died seized, averring that they were the only children of said Forgus Alkire, and that appellant was the childless second wife of said deceased, and his widow, and that she is only entitled to one-third of said lands for life.

The appellant filed an answer and a cross-complaint against the said William, Isaac, and Robert Alkire, and their wives.

It is averred, in the cross-complaint, that on the 22d day of November, 1872, she and Forgus Alkire, now deceased, entered into a marriage contract, whereby they agreed to become husband and wife; that, at the time said marriage contract was entered into, said Forgus Alkire was the owner in fee simple of certain described lands, about 1,000 acres, other than those described in the original complaint, which fact of ownership by said Forgus Alkire was known to this cross-complainant at the time said marriage contract was made, and that it was one of the considerations that entered into said contract. Cross-complainant knowing that said Forgus Alkire had, at the time said contract was made, ample and sufficient property out of which to provide them, while living, a proper and sufficient support, and in the event of his death before that of hers, that she should be left her interest in said land, which would be amply sufficient to support her in her old age and during her

natural life; that, notwithstanding these facts, and that said marriage contract was made as aforesaid, these cross-defendants colluded together for the purpose, and with the intention, to cheat and defraud this cross-complainant of her rights and benefits to her to be derived under said marriage contract as aforesaid, and by threats and undue influence induced the said Forgus Alkire, without her knowledge or consent, to execute deeds to said cross-defendants for the lands in said cross-complaint described; that after said deeds were made, as aforesaid, she and the said Forgus Alkire, in pursuance of their said marriage contract, were married on the 4th day of October, 1874; that the fact of the conveyance of the land, as aforesaid, was kept from her knowledge, and at the time of their said marriage, she believed that her said husband was the owner of the land in said cross-complaint described, and was in ignorance of the fraud, and when she did learn of the fraud, it was five or six years after her said marriage, and was revealed to her by a mere accident; that the land so conveyed to the cross-defendants is still owned by them, and has not been sold or conveyed to innocent parties.

It is averred that the cross-defendants are the children, and that she is the childless second wife and widow of said Forgus Alkire, deceased.

There is a second paragraph of the cross-complaint, substantially the same as the first, except it alleges that at the time of the making of said marriage contract the said Forgus Alkire represented to cross-complainant that he did own two thousand acres of land in White and Tippecanoe counties, and that he did in fact own such an amount of land in his own right, and that Forgus Alkire, in order to keep cross-complainant ignorant of the fact that he had conveyed said lands to his said children, and to conceal such fact from her, kept possession

of said lands, and paid taxes on them, rented them, and received rent for them until he died. Neither the date of the deeds nor the marriage is alleged in the second paragraph.

The appellees filed separate answers to the cross-complaint.

William T. Alkire answered in two paragraphs. The first alleged, that on December 31, 1872, Forgus Alkire executed and delivered a deed of general warranty to him for 160 acres of the land described in the cross-complaint, situate in White county, and the deed for the land was filed in the recorder's office of said White county, and recorded in deed record 30, on page 116, on the 14th day of January, 1873; that the deed was made in consideration of natural love and affection; that said appellant and his father, Forgus Alkire, were married on October 21, 1874; that he has no title to or interest in any of the other lands except the lands in Tippecanoe county, and denies any other allegation in the cross-complaint not in his said answer admitted.

The second paragraph is like the first, but further alleges, that the grantee immediately entered into possession of said real estate and has occupied the same ever since the date of the deed; that he has made lasting and valuable improvements upon said real estate; that he ditched and tiled said land at an expense of $1,000, and built fences thereon of the value of $500, and has paid $500 taxes upon said real estate; that, at the time he took the conveyance, he had no notice or knowledge of the marriage contract between his father and the appellant; that he was in possession of said land long before the marriage. All of which was well known to the appellant before her said marriage, and denies every allegation

in the cross-complaint not admitted in said paragraph of answer.

Appellee Isaac Alkire answered in two paragraphs, alleging, in the first, that on December 31, 1872, his father, Forgus Alkire, executed a deed to him conveying a portion of the lands described in the cross-complaint, situate in White county; that the deed for the same was recorded in the recorder's office of White county, on the 14th day of January, 1873; that the conveyance was in consideration of love and affection; that on January 30, 1873, his father executed another deed to him conveying another portion of said land, the grantor reserving to himself a life estate in the land, which deed was duly recorded in the county where the land was situated, on the 10th day of February, 1873, which conveyance was in consideration of natural love and affection; that, on the 13th day of September, 1874, his father conveyed to him another tract of said land, which conveyance was duly recorded in the county where the land was situated, in September, 1871; that the last deed reserved to the grantor a life estate, and was for a valuable consideration, being the full value of said real estate, paid by the grantee to the grantor; and the paragraph denies every allegation of the cross-complaint not admitted in the answer.

The second paragraph alleges the same facts as the first, alleging, as to the first tract, that he immediately took possession of it on the receipt of the deed; that, at the time, he had no knowledge of the marriage contract between his father and the appellant; that his father retained possession of the tract in which he reserved a life estate, until the date of his death; that the last described tract was conveyed for a full consideration paid by the grantee to his father, without any intent to defraud appellant or any one else; that appellant and his father were

Alkire *v.* Alkire *et al.*

married October 21, 1874; that, at the time of said marriage, appellant had notice of said conveyance and that the grantee had taken possession of the first described tract and was then in full possession and control of the same; that he has no interest in, or possession or control of, any of the other lands conveyed, and denies every allegation of the cross-complaint not admitted in the answer.

Robert Alkire answered in two paragraphs, which are substantially the same as those of Isaac's.

The appellees filed a joint answer. First, a general denial; the second and third, that appellant's cause of action did not accrue within six years; the fourth and fifth, that it did not accrue within fifteen years. Demurrers were filed to the separate and joint answers, on the grounds that they did not state facts sufficient to constitute a defense to the cross-complaint, which demurrers were overruled, exceptions reserved, and errors assigned on these rulings. Judgment was rendered on demurrer in favor of the defendants to the cross-complaint.

Counsel for appellant insist that the court erred in overruling the demurrers to these various paragraphs of separate and joint answers, on the ground that neither of the paragraphs states facts sufficient to constitute a defense, while counsel for the appellees insist that each of the paragraphs is sufficient, but even if they are not, there was no error committed in the overruling of the demurrers, for the reason that a bad answer is good to a bad complaint, and that the cross-complaint is bad.

On this latter theory, we think the rulings of the court must be sustained, for each paragraph of cross-complaint is clearly bad.

It is a well settled principle that a demurrer to an answer searches the record, and reaches back to the complaint, whether the complaint was objected to or not.

*Dorrell* v. *Hannah*, 80 Ind. 497; *Gould* v. *Steyer*, 75 Ind. 50; *Pittsburgh, etc., R. W. Co.* v. *Hixon*, 79 Ind. 111, *Scott* v. *State*, for use, 89 Ind. 368.

An exception by the plaintiff to the overruling of a demurrer to an answer raises the inquiry as to the sufficiency of the complaint. *Haymond* v. *Saucer*, 84 Ind. 3.

The same rule must apply as to the cross-complaint and answer thereto, as issues are joined on the cross-complaint the same as a complaint.

The paragraphs of cross-complaint in this case show that at the time of the entering into the marriage contract between appellant and Forgus Alkire, the latter had three sons; that he owned some two thousand acres of land and other property. No value is alleged as to any of the land, and it does not appear in the first paragraph what the deceased was worth. In the second paragraph it is alleged that he was generally reputed to be worth at least $75,000; that appellant knew he owned the land; that one of the inducements for her to marry him was that he was in such financial condition as to properly support them during his life, and that she would receive sufficient interest in his estate at his death, in case she survived him, to afford her proper support and maintenance during the remainder of her life.

There is no allegation showing that after he conveyed the land which he did to his three sons, he did not still possess an abundance for the support of himself and his wife, or that it so reduced his estate as that the share she took of his estate at his death was not sufficient to afford an ample support for her; and if his estate was sufficient to afford this ample support, it is all she alleges that she was expecting to receive as an inducement to enter into the marriage contract, and which operated as an inducement for her to enter into the contract.

Alkire *v.* Alkire *et al.*

It does not appear, from any averments in either paragraph of the complaint, that the land deeded to his three sons was an unreasonable or unfair provision to make for his children in view of the amount of his estate. It does not appear, from any averments of the complaint, that Forgus Alkire made any representation as to the amount or value of his property, as an inducement for the appellant to enter into the marriage contract with him, nor agreed or promised not to dispose of any of his property before marriage.

It is charged, in general terms, that after the contract of marriage was entered into, and before it was consummated, these appellees colluded together, and by threats and undue influence induced Forgus Alkire, without her consent, to convey certain of his lands to them, with intent to cheat and defraud her of her rights under the contract; but these averments, of themselves, are insufficient.

At the time Alkire made the deeds to his children, he was unmarried; it was unnecessary to get the appellant's consent to enable him to make proper provision for his children, and the allegations that he was induced by threats and undue influence to convey them certain lands do not of themselves make the conveyance fraudulent as against the wife; for, as we have said, there are no facts alleged in the pleading showing that it was an unreasonable provision to make for his children, or that it did not leave the father possessed of sufficient property to afford the appellant all of the financial advantages she contemplated by reason of her marriage. And it is not averred that she would not have entered into the contract or consummated the marriage had Forgus Alkire not owned the property he afterwards conveyed to his sons at the time she entered into the contract, or that she would not have

consummated the marriage had she known that he had conveyed the land previous thereto; nor does it appear that the deeds were not recorded, or that he did anything to conceal the fact of the conveyances, except it is averred that he retained the possession, and kept the fact of the conveyances a secret from her.

In *Dearmond* v. *Dearmond,* 10 Ind. 191, cited by counsel for appellant, it is held that if a man or woman represent to the other, as an inducement to marriage, that he or she is the owner of certain property, and the marriage in part upon such consideration should be consummated, a secret voluntary conveyance of such property before the marriage, by one of the parties, would, it seems, be a fraud upon the other. This, we concede, to be the correct rule, but, manifestly, the representations must enter into and operate as an inducement to the marriage. Ordinarily, the owner of property has the right to dispose of it as he may choose. The husband is not only under obligation to provide a suitable maintenance for his wife, but it is proper and right and commendable on the part of a father to deal justly by his children, and make proper provision for them; and, when one contemplates a second marriage, and having children by a former wife, having made no representation as to his property for the purpose of inducing his prospective wife to enter into a marriage contract with him, or any contract with her in relation thereto, the fact that he makes a reasonable provision for his children in proportion to his estate, retaining sufficient property to afford him and his second wife a reasonable support, and her a reasonable support after his death, should she survive him, does not make, we think, such transaction a fraud, though the second wife was not advised of it, and did not give her consent to it.

We have no doubt that circumstances might exist which would make a conveyance fraudulent.    If representations were made as an inducement for the wife to enter into the contract, or if agreements with the wife were violated, or conveyances made under some circumstances, on the eve of the marriage, so as to operate as a fraud, under such circumstances they would be set aside, and the second wife granted her interest in the estate.

We are aware that some authorities go so far as to hold a voluntary conveyance of property, after the engagement, and before the marriage, without the knowledge of the other party to the marriage contract, fraudulent and void, even though the other contracting party did not know that the person possessed such property, until after the marriage; but this, we think, is carrying the doctrine beyond reasonable limits, and prefer to follow the line of authorities making a distinction and holding that a conveyance is valid made by a grantor to one who has a legal or moral claim on the grantor.

Chancellor Kent says: "If the settlement be upon children by a former husband, and there be no imposition practiced upon the husband, the settlement would be valid, without notice; and it would seem, from the opinion of the Lord Chancellor, in *King* v. *Colton*, that such a settlement, even in favor of a stranger, might be equally good under like circumstances." 2 Kent, p. 175.

In *Butler* v. *Butler*, 21 Kan. 521, it is said: "Again, the conveyance was meritorious, and to those having claims upon the grantor.    It was to his minor children, and as a provision for them.    Surely, the duty of a father to his minor children by a deceased wife is as great as that to a woman he is hoping to wed." *Strathmore* v. *Bowes*, 1 Ves. Jr. 22; *McNutt* v. *McNutt*, 116 Ind. 545.

The burden is upon the party alleging the fraud, and the complaint, to be good, must show affirmatively that

the conveyance is such an one as the grantor had no right to make.

It appears, by the cross complaint, that the persons to whom the conveyances were made, were children of the grantor, and that the grantor was a man of large means, and able to make suitable provision for his children without injustice to the appellant. There are no facts averring that any provision had been previously made for them, or but what they were minors, or that the conveyances were made upon the eve· of the marriage. From aught that appears in the first paragraph, the conveyances may have been made nearly two years before the marriage, the dates of the deeds are not averred, and from aught that appears in the second· paragraph, even a longer time may have elapsed, as neither the dates of the deeds nor the date of the marriage are stated.

We do not think that such a state of facts is alleged in either paragraph as rendered the transactions fraudulent or the conveyances void. In our opinion, each paragraph of ·the cross-complaint is clearly bad, and applying the doctrine that a bad answer is good enough for a bad complaint, there was no error in overruling the demurrers, and it is immaterial to determine whether the several paragraphs of. answer were sufficient if the complaint had stated a cause of action.

Judgment affirmed, with costs.

Filed Nov. 17, 1892; petition for a rehearing overruled May 12, 1893.