CASE 4—PETITION ORDINARY—February 4.

# Vanmeter v. Spurrier, &c.

APPEAL FROM HARDIN CIRCUIT COURT.

1. CONSTITUTIONAL LAW—TITLE OF ACT.—An act, entitled "An act to regulate the sale of fertilizers in this Commonwealth, and to protect the agriculturist in the purchase and use of the same" (Gen. Stats., chapter 42a, 650) relates to but one subject, and that is expressed in the title.

2. SAME—DOUBLE TAXATION.—As the fees which the statute authorizes to be collected from any person selling or offering to sell a commercial fertilizer, are intended to be used for the single purpose of maintaining the Experiment Station, they can not be regarded as taxes, and do not render the statute liable to the objection that it imposes double taxation.

3. SAME—INTER-STATE COMMERCE.— The statute can not be construed to authorize a levy of an impost on inter-State commerce beyond what is necessary to insure inspection.

4. A CONTRACT PROHIBITED BY STATUTE WILL NOT BE ENFORCED, and it is not necessary that there should be an express prohibition in order to render the contract void; as a general rule the fact that a penalty is attached implies a prohibition.

A contract for the sale of a fertilizer not labeled as required by the statute is void, although such a sale is not expressly prohibited. The penalty fixed for selling without having complied with this requirement implies a prohibition; it being manifest that the statute was enacted for the purpose of protecting the public against the fraudulent sale of goods and not for the purpose of raising revenue.

5. THE ATTACHING OF THE REQUIRED LABEL TO EACH PACKAGE OF FERTILIZER IS NECESSARY to constitute a compliance with the provisions of the statute. It is not sufficient that a sample of the fertilizer has been analyzed by the Experiment Station.

6. ONE WHO PURCHASED A PACKAGE OF FERTILIZER WITHOUT THE REQUIRED LABEL BEING ATTACHED has not been damaged by the failure of the seller to comply with the statute, as he has used the fertilizer without paying for it; and he can not, therefore, recover any thing upon his counter-claim in this action to recover the purchase price of the fertilizer.

J. H. VANMETER, CHELF, SPRIGG AND HOBSON & O'MEARA FOR APPELLANT.

1. Where a statute pronounces a penalty for an act, a contract founded on

Vanmeter v. Spurrier, &c.

such act is void, although the statute does not pronounce it void, or in express words prohibit it. (5 Lawson on Rights, &c., sec. 2393; 1 Parsons on Contracts, 456; Collins v. Merrell, 2 Met., 164; Vannoy v. Patton, 5 B. M., 248; Creekmore v. Chitwood, 7 Bush, 318; Slade v. Arnold, 14 B. M., 287; Murphy v. Thompson, 14 B. M., 419; Franklin Ins. Co. v. L. & A. Packet Co., 9 Bush, 590; Woods v. Armstrong, 54 Ala., 150; s. c., 25 Am. Rep, 671; Cove Guano Co. v. Dowling, 85 Ala. 142; Johnson v. Hanover, &c., Bank, 88 Ala., 271; Allen v. Pearce, 80 Ga., 417; Allen v. Pearce, 84 Ga., 607; McConnell v. Kitchens, 20 S. C, 430; s. c, 47 Am. Rep., 845; Spurgeon v. McIlwain, 6 Ohio, 442; s. c., 27 Am. Dec., 266; Dillon v. Allen, 46 Iowa, 299; s. c, 26 Am. Rep., 145; Ingersoll v. Randall, 14 Minn., 400; Bach v. Smith, 2· Wash., 145; Ludlow v. Hardy, 38 Mich., 690; Pitrel Guano Co. v. Jarnette, 25 Fed. Rep., 677; Bicket v. Chatterton, 13 R. I., 299; s. c, 43 Am. Rep, 30; Schmidt v. Barker, 87 Am Dec., 531.)

2. It was error to allow plaintiffs to prove by witnesses that they bought the same brand of fertilizers from plaintiffs in September or October, 1888, and got good results. (Stephen on Evidence, p. 17, art. 10; 1 Greenleaf on Evidence, sec. 52; Delano v. Goodwin, 97 Am. Dec., 601; Wentworth v. Smith, 82 Am. Dec., 228; Dutton v. Ware, 43 Am. Dec., 590; Bliss v. Wilbrahan, 8 Allen, 565; Raymond v. Lowell, 109 Mass., 127; Roundtree v. Smith, 108 U. S., 269.)

3. If the fertilizer was sold for use on the wheat crop, and was not as represented, and thereby the defendants sustained a loss on their wheat, they should recover for this on their counter-claim, and the measure of damages would be the value of the wheat lost by reason of the fertilizer being defective, and falling short of the warranty. (White v. Miller, 71 N. Y., 168; s. c., 27 Am. Rep., 13; 79 N. Y., 393; s. c., 34 Am. Rep., 544; Wyck v. Allen, 69 N. Y., 71; s. c., 25 Am. Rep., 136; Poland v. Miller, 95 Ind., 387; s. c., 48 Am. Rep., 730; Wolcott v. Mount, 36 N. J., 262; s. c., 13 Am. Rep., 438, and note; 38 N. J., 496; s. c., 20 Am. Rep., 425; Bell v. Reynolds, 78 Ala., 511; s. c., 56 Am. Rep., 52.)

CHARLES G. RICHIE FOR APPELLEES.

1. The infliction of a penalty does not necessarily make a contract void, but the question is one of legislative intention. (Smith on Contracts, 256; Wetherill v. Jones, cited therein; Lindsay v. Rutherford, 17 B. M, 306; Harris v. Runnels, 12 How.. 79; Vining v. Bricker. 14 Ohio St., 331; Niemeyer v. Wright, 75 Va., 239; Learned v. Andrews, 8 Am. Rep., 346; Combs v. Emery, 14 Me., 404; Strong v. Darling, 9 Ohio, 201.)

2. The fertilizer act (chapter 42a, General Statutes) is unconstitutional, because—

First. It relates to more than one subject, and the title does not

truly express the scope of the act. (Constitution of 1849, article 2, section 37.)

*Second.* It taxes fertilizers twice for a single purpose, and the taxation is not uniform. (Cooley on Taxation, p. 165; Livingston *et al.* v. City of Paducah, 80 Ky., 660.)

*Third.* It levies an impost on inter-State commerce beyond what is necessary to secure inspection. (Constitution of United States, art. 1, sec. 10; Brown v. Maryland, 12 Wheat., 419; Robbins v. Taxing District, 120 U. S., 489; Asher v. Texas, 128 U. S., 129; State Freight Tax Case, 15 Wal., 232; American Fertilizer Co. v. Board of Agriculture, 43 Fed. Rep, 612.)

JAMES MONTGOMERY on same side.

1. The statute is unconstitutional. (Hall v. De Cuir, 95 U. S., 485; Chy-Lung v. Freeman, 92 U. S., 275; State v. Constitution, 42 Cal., 578; Lyng v. State, 135 U. S., 161.)

2. The mere fact that the statute imposes a fine does not rend r the contract void. The fine was regarded as a sufficient punishment. (Murphy v. Thompson, 14 B. M., 420; Solomon v. Dresher, 4 Minn., 278; Babcock v. Goodrich, 47 Cal., 509; Coombs v. Emery, 14 Me., 400; Lester v. Howard Bank, 33 Md., 538; Niemeyer v. Wright, 75 Va., 239; American Fert. Co. v. Board Agr., N. C., 43 Fed. Rep.; Lindsay v. Rutherford, 12 B. M., 306; Vannoy v. Patton, 5 B. M., 248; Hunter v. Cobb, 1 Bush, 239; Creekmore v. Chitwood, 7 Bush, 318.)

JUDGE LEWIS delivered the opinion of the court.

Appellees Spurrier & Bading, assignees, brought this action on a note given October, 1888, to the Thompson & Edwards Fertilizer Company, by appellants, Vanmeter and others, the consideration being commercial fertilizer, sold and delivered in sacks to the purchasers. Two distinct grounds of defense are stated in the answer, which is also made a counter-claim:

1. That plaintiffs represented the commodity to be valuable and good for wheat, but that it turned out to be, after being properly applied, and was, in fact, worthless as a commercial fertilizer, and consequently the note is without consideration.

2. That by reason of non-compliance of the sellers

with provisions of "An act to regulate the sale of fer-
tilizers in this Commonwealth, and to protect agri-
culturalists in the purchase and use of the same,"
approved April 13, 1886, the note is void and unen-
forceable.

As an issue of fact in respect to the first alleged
ground of defense was made by the pleadings, and
submitted to and determined by the jury in favor of
the plaintiffs, we will not here consider it.

The statute mentioned is substantially as follows:

SEC. 1. On or before the first day of May of each
year, before any person or company shall sell, offer
or expose for sale in this State, any commercial fer-
tilizer whose retail price is more than ten dollars per
ton, said person or company shall furnish to the di-
rector of the Agricultural Experiment Station, inau-
gurated by the Agricultural and Mechanical College
of Kentucky (which Station is here recognized as the
"Kentucky Agricultural Station"), a quantity of such
commercial fertilizer, not less than one pound, suffi-
cient for analysis, accompanied by an affidavit that
the substance so furnished is a fair and true sample
of a commercial fertilizer which said person or com-
pany desires to sell within this State.

SEC. 2. It shall be the duty of said director to make
or cause made a chemical analysis of every sample
of commercial fertilizer so furnished him, and he shall
print the result of such analysis in the form of a label;
such label shall set forth the name of the manufac-
turer, the place of manufacture, the brand of the fer-
tilizer and the essential ingredients contained in said
fertilizer, expressed in terms and manner approved

by said director, together with a certificate from the director, setting forth that said analysis is a true and complete analysis of the sample furnished him of such brand of fertilizer; and he shall also place upon each label the money value of such fertilizer, computed from its composition, as he may determine. The director shall furnish such label in quantities of five hundred or multiple thereof, to any person or company desiring to sell, or expose for sale, any commercial fertilizer in this State.

Sec. 3. Every package of any commercial fertilizer whose retail price is over ten dollars per ton, sold or offered for sale in this State, shall have attached to it in a conspicuous place a label having a certified analysis of a sample of such fertilizer from said director as provided in the foregoing sections.

Sec. 4. Any manufacturer or vendor of any commercial fertilizer who shall sell, offer or expose for sale, any fertilizer without having previously complied with the provisions of this act hereinbefore set forth shall, upon indictment and conviction, be fined one hundred dollars for each violation or evasion of this act, which fines shall be paid into the State Treasury.

Sec. 5. The director shall receive for analyzing and affixing his certificate the sum of fifteen dollars; for labels furnished, one dollar per hundred.

Section 6 requires the director to pay all such fees into the treasury of the Agricultural and Mechanical College of Kentucky, to be used "in meeting the legitimate expenses of the Station, in making analysis of fertilizers, in experimental tests of the same, and in such other experimental work and purchases

as shall inure to the benefit of the farmers of this Commonwealth." The director is required to report to the Commissioner of Agriculture the work done by him, and itemized statement of receipts and expenditures. And among other provisions of section 7 is one authorizing any agriculturist, purchaser of a commercial fertilizer, to forward a sample of same to the Experiment Station for analysis, free of charge.

Counsel for appellees contends, for various reasons we will now consider, that the statute is unconstitutional.

1. We do not see wherein the statute violates that clause of the Constitution requiring each law to relate to but one subject, and that to be expressed in the title; for there is no provision that we are able to discover which does not have a natural connection with the subject of the title, and relate, directly or indirectly, to it.

2. Equally groundless is the objection that it imposes double taxation; for the fees authorized to be collected from a person or company selling, or offering to sell, a commercial fertilizer are intended to be used for the single purpose of supporting and maintaining the Experimental Station, and are not, in proper meaning of the term, taxes at all.

3. The statute can not be fairly construed to authorize, in the language of counsel, a levy of an impost on interstate commerce beyond what is necessary to insure inspection; nor is the language of section 6 susceptible of the meaning counsel gives it. The statute, as its title indicates, was enacted for protection of farmers of this Commonwealth against fraud and imposition of

those having for sale commercial fertilizers. To accomplish that object, each one selling, or offering to sell, any fertilizer is required to submit a sample for analysis and test of its quality at the Experimental Station. For that purpose only can the fees collected by the director be used, and in that way and to that extent only can farmers of the Commonwealth be benefited by the statute. In our opinion the law is valid in every respect.

It is admitted that the retail price of the fertilizers sold to appellants was worth over ten dollars per ton, and that no one of the packages had attached to it when sold the label required by section 3 of the statute; and the main question, therefore, is, whether the contract sued on is, by reason of such non-compliance with and disregard of the statute, void and unenforceable.

It is too well settled for argument that a contract prohibited by statute will not, nor should be, enforced by the court. But whether a contract has been prohibited sometimes depends upon construction of such statute when not clear in meaning, and we will at present assume such is this case.

In Benjamin on Sales, volume 2, 712, the following two propositions are stated to be fairly deducible from the authorities:

"*First.* That when the question is whether a contract has been prohibited by statute, it is material in *construing the statute* to ascertain whether the Legislature had in view *solely* the *security and collection of the revenue*, or had in view, in whole or in part, the protection of the public from fraud in contracts,

.or the promotion of some object of public policy. In the former case, the inference is that the statute was not intended to prohibit contracts, in the latter, that it was.

"*Second*. That in seeking for the meaning of the lawgiver, it is material also to inquire whether the penalty is imposed once for all on the offense of failing to comply with the requirements of the statute, or whether it is a recurring penalty, repeated as often as the offending party may have dealings. In the latter case the statute is intended to prevent the dealings, to prohibit the contract, and the contract is therefore void; but in the former case such is not the intention, and the contract will be enforced."

Tested by either one of these rules, the statute in question would have to be construed as intended to prohibit the contract in case of non-compliance with or breach of its provisions. For the Legislature had in view, when enacting it, not the security and collection of the revenue even partly, but had in view the protection of the public from fraud in contracts for sale of fertilizers; and it is expressly provided in section 4 the fine shall be imposed for each violation or evasion of the act.

In Lindley v. Rutherford, 17 B. M., 248, the following proposition, stated in Chitty on Contracts, was referred to with approval: "A contract is void if prohibited by statute, though the statute only inflicts a penalty, because such penalty implies a prohibition. If the contract be illegal, it makes no difference, in point of law, whether the statute which makes it so has in view the protection of the revenue or any

other object." But it was, nevertheless, there held that contracts for sale and purchase of bills of exchange were not prohibited by the statute then under consideration, which required each person conducting the business of brokers or exchange dealers to obtain a license under penalty of a fine; the court being of opinion the statute was intended to raise revenue, not to strike a blow at the business.

But neither the conclusion in that case nor reason for it affects the question before us; for there is a marked difference between a statute, the prime or sole purpose of which is to secure or raise revenue by a license tax, and one enacted to protect the public against fraudulent sale of goods, or for other reason of public policy. To prohibit a contract in one case when the business is known and recognized to be otherwise lawful and legitimate, is not essential to the main purpose, which is to raise revenue by a license tax. But to do so in the other class of cases is essential to the main purpose, whether it be to prevent fraudulent sale of spurious and hurtful commodities, to secure the public health or protect public morals.

That a penalty implies prohibition in such case as this, though there be no prohibitory words in the statute, has been decided not only by this court, in Lindley v. Rutherford, but by numerous courts in England as well as in this country. In Woods v. Armstrong, 54 Ala., 150, 25 Am. Rep., 671, the same question arose as the one before us, and as to construction of a statute enacted for the same purpose and in all respects like the one we are now considering,

and the contract was held void. There, upon authority of a previous case in the same court, the proposition of law already referred to was thus stated: "It has been repeatedly determined that a penalty inflicted by a statute upon an offense implies a prohibition, and a contract relating to it is void, even when it is not expressly declared by the statute that the contract shall be void."

In McConnell v. Kitchen, 20 S. C., 430 (47 Am. Rep., 845), was determined the proper construction and meaning of a statute like the one in question, and it was held that "when a merchant sold a fertilizer without a tag stating its chemical composition, &c., as required by the statute under penalty, and took a note for the purchase money, he could maintain no action on the note."

Under a similar statute in Georgia it was likewise held an action could not be maintained for purchase price of a fertilizer sold by a merchant who had violated provisions of the statute; and such must be the logical conclusion from the legal propositions referred to, which are sustained by courts and text-writers generally.

Counsel for appellee call our attention to the cases of Harris v. Runnels, 12 Howard, 79, and Niemeyer v. Wright, 75 Va., 239. But in the first case it was said that "where the statute is silent, and contains nothing from which the contrary can be properly inferred, a contract in contravention of it is void;" and in the other it was conceded "that as a general rule a contract founded on an act forbidden by a statute under a penalty is void, although it be not ex-

pressly declared to be so;" and the decision of the case turned upon the meaning of the various parts of the statute, which, considered together, in opinion of the court, authorized the conclusion the Legislature did not intend to avoid a contract made in contravention of it. But there can be, we think, no question of the intention of the Legislature in this case; for in language too plain to be misunderstood the statute makes compliance with each provision thereof an indispensable condition of the right of any person or company to sell, offer or expose for sale in this State any commercial fertilizer, retail price of which is more than ten dollars per ton; and according to what rule of government or administration of justice a party who has refused to comply with that condition can ask enforcement of a contract so distinctly prohibited, we are unable to see.

It appears from the evidence that a sample of the fertilizer was analyzed by the Kentucky Agricultural Experimental Station in January, 1888, and it is contended the statute was thereby substantially complied with. But no record of the analysis is required by the statute to be kept by the director; nor is there any other way provided by which the fact of analysis can be made known to a purchaser, or preserved as a guide or check, except by means of the label upon which a certified analysis is required to be placed. It seems to us the attaching of the label to each package is essential to accomplish the purposes of the statute, and its provisions can not be regarded as complied with without the label being so attached.

The defendants, in their counter-claim, ask for dam-

ages, but it is hard to see how they have been damaged, in view of the fact they have used the fertilizer and paid nothing for it.

Wherefore the judgment is reversed, and cause remanded for a new trial consistent with this opinion.