CASE 55—ACTION ON CONTRACT—APRIL 27.

## Smith v. Robertson, Etc.

APPEAL FROM FAYETTE CIRCUIT COURT.

CONTRACTS—AGAINST PUBLIC POLICY—UNLICENSED STALLION.—THE
owner of an unlicensed stallion may not maintain an action for
the service of such stallion.

WEBB & FARRELL FOR THE APPELLANT.    (Brief not in the record.)

NO APPEARANCE FOR THE APPELLEE.

JUDGE GUFFY DELIVERED THE OPINION OF THE COURT.

It is substantially alleged in the petition in this action
that in the year 1895, the plaintiff, Smith, was the owner
of a stallion known as Imp. Deceiver; and that the
defendants, George L. and Eva M. Robertson, were the
owners of a chestnut mare, and that by agreement between
plaintiff and defendants said mare was bred to the said
stallion, and that by. the terms of said agreement de-
fendants promised and agreed to pay plaintiff the sum
of $150 for the services of said stallion, to· be due and
payable when said mare had a foal by said stallion; that
upon the 3d of April, 1896, said mare produced a foal, the
get of said stallion; and that the services of said stallion
were worth the sum of $150, which sum the defendants
promised to pay for a foal. The plaintiff claimed a lien
upon said colt, and instituted this action to obtain a judg-
ment against the defendants, and for an enforcement of
their lien upon said colt.

The first paragraph of the answer pleaded a defect of
parties, alleged that the stallion "Imported Deceiver" was
owned by Samuel Smith, S. C. Lyon, Nat Pettit, and others,
unknown to the defendants, and that plaintiff, Smith,

owned only one-eighth interest in said horse; hence they
prayed that plaintiff's petition be dismissed. In the sec-
ond paragraph it was pleaded, in substance, that, when
said colt got by said stallion was foaled, defendants should
have an option either to give to the owners of said stallion
one-half interest in said foal at weaning time, or pay to the
owners the sum of $150, and that they determined, instead
of paying the $150, to give said plaintiff and his associates
one-half interest in said colt, and so notified plaintiff about
the 1st of May, 1896, and alleged that they were now will-
ing and able to do so. In the third paragraph it is substan-
tially alleged that the plaintiff nor any of his associates
had paid any license fee in Jessamine county, where said
stallion was during the season of 1895, and relied upon the
statute in such cases made and provided in bar of plain-
tiff's right to recover.

The court overruled the plaintiff's demurrer to the first
and second paragraphs of the answer, but sustained the
demurrer to the third paragraph.

The reply may be treated as a traverse of the remaining
paragraphs of the answer, and also showed a right of plain-
tiff to recover the $150 under an arrangement between him-
self and the other joint owners, providing the same could,
in law, be collected. The rejoinder may be treated as a
traverse of the reply.

After the issues were fully made up, and proof
taken, the court adjudged in favor of the defend-
ants, and dismissed the petition of plaintiff, and from that
judgment this appeal is prosecuted.

It is insisted for appellant that the burden of sustaining
the agreement between the parties as to the option of de-
fendants to give plaintiff one-half interest in the colt in-
stead of paying $150 is upon the defendants, and that they

have totally failed to sustain the defense by even a preponderance of the evidence.

The question first to be disposed of is as to the correctness of the ruling of the court in sustaining the demurrer to the third paragraph of the defendants' answer; in other words, the main question for decision in this case is whether the owner of a stallion, who has not procured a license to stand same, can recover for the services of the stallion.

It is not disputed but what the Kentucky Statutes require license to be paid by all persons who stand stallions for hire; and it is further provided by law that, if a person is engaged in such business without license, he is liable to a fine of not less than $50 nor more than $1,000. But it is suggested that the statute in question is a statute for revenue, and not for any other purpose, and that a contract for the services of an unlicensed stallion may nevertheless be collected, although a penalty is denounced against the keeper of such stallion if he stands the same without license. This question is discussed in Buckley v. Humason (Minn.), 16 Law Rep. Ann., 423, note (s. c., 52 N. W., 385), in which the following from Mr. Benjamin is quoted with apparent approval. It is there stated:

That, where a contract is prohibited by statute, it is immaterial to inquire whether the statute was passed for revenue purposes only, or for any other object. Secondly. That, when the question is whether the contract has been prohibited by statute, it is material, in construing it, to ascertain whether the Legislature had in view solely the security and collection of revenue, or had in view, in whole or in part, the protection of the public from fraud in contracts or the promotion of some object of public policy. In the former case the inference is that the statute was not

intended to prohibit contracts, in the latter that it was. Thirdly. That in seeking for the meaning of the law-giver it is material also to inquire whether the penalty is imposed once for all on the offense for failing to comply with the requirements of the statute, or whether it is a recurring penalty repeated as often as the offending party may have dealings. In the latter case the statute is intended to prohibit contracting, and the contract is there-fore void; but in the former case such is not the intention, and the contract will be enforced.

Section 4201, c. 108, Kentucky Statutes, provides: "Any person who shall engage in any business, or sell or offer to sell any article on which a license is required before procuring a license, and paying the tax thereon as required by law, shall be deemed guilty of a misdemeanor, and on conviction be fined not less than $50 nor more than $1,000 for each offense, unless otherwise specially provided."

It will be seen from this statute that a person furnishing the services of an unlicensed stallion for hire or compensation would be liable to indictment, and subject to a fine for each offense. Each contract or service so rendered or performed would evidently be a separate offense, hence it seems that such action would bring the offending party within the rule announced above.

In section 547, Bishop on Contracts, it is said: "And the rule is that, when the statute forbids a particular business generally, or to unlicensed persons, any contract made in such business by one not authorized, or made with the view of violating the statute, is void. Within this principle is the sale of goods to be used in the business from one who has knowledge of the proposed use."

And in section 549 it is said: "The law, for convenience

for adaptation to our infirmities, and, to some degree, from necessity, has, besides its doctrine of fundamental right, rules more or less technical, and a policy of the like sort. So it must refuse to enforce—or, in other words, it must hold void—contracts which violate such rules or policy. A *fortiori*, it can not recognize as valid any undertaking to do what fundamental doctrine or legal rule directly forbids. Nor can it give effect to any agreement the making whereof was an act violating law. So that, in short, all stipulations to overturn, or in evasion of, what the law has established; all promises interfering with the working of the machinery of the government in any of its departments, or in obstructing officers in their official acts, or corrupting them; all detrimental to the public order and public good, in such manner and degree as the decisions of the courts have defined; all made to promote what the statute has declared to be wrong—are void. If the court should enforce them, it would employ its functions for undoing what it was established to do. The act would be in the nature of suicide."

In Wood v. Armstrong, 54 Ala., 150, 25 Am. Rep., 671, it is said: "Where a statute pronounces a penalty for the act, a contract founded on such act is void, although the statute does not pronounce it void, or expressly prohibit it."

On page 675 of 25 Am. Rep., a number of English authorities are referred to. Law v. Hodgson, 2 Camp., 147, was an action for the value of bricks smaller than the statutory dimensions, and the statute simply fixed a penalty for violation. The statute only declared that bricks shall be made of certain dimensions. Lord Ellenborough said: "The first section of this statute [17 Geo. III. c. 42] absolutely forbids such bricks to be made for sale. There the

plaintiff, in making the bricks in question, was guilty of an absolute breach of the law, and he shall not be permitted to maintain an action for their value."

Brown v. Duncan, 10 Barn. & C., 93, was an action on guaranty for sales of liquors which were distilled without license under a statute which fixes a penalty. It was held that, these being mere revenue regulations, a breach did not render the act so illegal as to prevent a recovery for sales. The case was distinguished from the brick case on the ground that this statute was only to protect revenue, while the other was to protect public good.

The same doctrine was announced in Johnson v. Hudson, 11 East, 180, in respect to the importation of tobacco.

But in Cope v. Rowlands, 2 Mees. & W., 157, this distinction is overruled, the court saying that, if a contract be rendered illegal, it can make no difference in point of law whether the statute which made it so has in view the protection of the revenue, or any other object.

In Drury v. Defontaine, 1 Taunt. 136, Mansfield, C. J., said: "If any act is forbidden under a penalty, a contract to do it is now held void."

The statute of New York forbids the transaction of business in the name of a partner not interested in the firm, and requires that the designation "Co." or "Company" shall represent an actual partner, and violation of this statute is made a misdemeanor, punishable by fine. Under this statute it was held that all contracts in violation of it were absolutely void. Swords v. Owens, 43 How., Prac., 176.

To the same effect is the decision of Hallett v. Novion, 14 Johns., 273. Many other decisions to the same effect are found in the subsequent pages of the volume hereinbefore referred to.

Vanmeter v. Spurrier, 94 Ky., 22, [21 S. W., 337], was an action brought by Spurrier, etc., on a note given to. the Thompson & Edwards Fertilizer Company by Vanmeter and others, the consideration being commercial fertilizer sold and delivered in sacks to the purchaser. Two distinct grounds of defense are stated in the answer, which is also made a counterclaim. The second defense was that by reason of the noncompliance with the provisions of an act to regulate the sale of fertilizers in this Commonwealth, and to protect agriculturists in the use of fertilizers, approved April 3, 1886, the note is void, and unenforceable. The statute required certain things to be done by the seller of fertilizers, and a further provision of the statute provided that any vendor of any commercial fertilizer who shall sell or offer for sale such fertilizers without first previously complying with the provisions of the act shall, upon indictment, and upon being found guilty, be fined $100 for each violation or evasion. It further provided that the director shall receive, for analyzing the fertilizer, and fixed his services at the sum of $15, etc. It was further provided that the director should pay all such fees into the treasury of the Agricultural or Mechanical College of Kentucky, to be used for the purpose of meeting the legitimate expenses of the station, etc. The court, in discussing the several questions involved said: "It is admitted that the retail price of the fertilizers sold to the appellants was worth over ten dollars per ton, and that no one of the packages had attached to it the sale label, as required by section 3 of the statute; and the main question, therefore, is whether the contract sued on is, by reason of such non-compliance with and disregard of the statute, void and unenforceable.

It is too well settled for argument that a contract pro-

Smith v. Robertson, &c.

hibited by statute will not, nor should be, enforced by the court. But whether the contract has been prohibited sometimes depends upon construction of such statutes when not clear in meaning, and we will at present assume that such is the case."

The court then proceeded to quote from Benjamin on Sales, which substantially embodies the quotation herein made from 16 Law Rep. Ann. [423]. The court then said: "Tested by either one of these rules, the statute in question would have to be construed as intended to prohibit the contract in case of non-compliance with, or breach of, its provisions; for the Legislature had in view, when enacting it, not only the security and collection of the revenue, even partly; but had in view the protection of the public from fraud in contracts for sale of fertilizers; and it is expressly provided, in section 4, the fine shall be imposed for each violation or evasion of the act.

"In Lindsey v. Rutherford, 17 B. Mon., 248, the following proposition, stated in Chitty on Contracts, was referred to with approval: 'A contract is void if prohibited by statute, though the statute only inflicts a penalty, because such penalty implies a prohibition. If the contract be illegal, it makes no difference, in point of law, whether the statute which makes it so has in view the protection of the revenue, or any other object.'

"But it was nevertheless there held that contracts for sale and purchase of bills of exchange were not prohibited by the statute then under consideration, which required each person conducting the business of brokers or exchange dealers to obtain a license, under penalty of a fine; the court being of opinion that the statute was to raise revenue, not to strike a blow at the business.

"But neither the conclusion in that case nor rea-

son for it affects the question before us; for
there is a marked difference between a statute
the prime or sole. purpose of which is to secure
or raise revenue by a license tax, and one enacted to
protect the public against fraudulent sale of goods or for
other reason of public policy. . . .

That a penalty implies prohibition in such. case as this,
though there be no prohibitory words in the statute, has
been decided, not only by this court in Lindsey v. Ruther-
ford, but by numerous courts in England, as well as in this
country."

The court then quotes with approval from the case of
Wood v. Armstrong, 54 Ala., —, heretofore referred to.
From an early period of the history of this country persons
desiring to stand a stud horse were required to obtain a li-
cense, and a penalty denounced against them for engaging
in such business without license, and it can hardly be as-
sumed that the sole purpose was to raise revenue, but man-
ifestly one of the objects was to encourage men to procure
and stand a superior breed of horses by excluding owners
of inferior stock from engaging in such business, unless
they would in like manner procure a license; it being rea-
sonably presumed that the owner of inferior stock would
hardly be able to obtain sufficient custom to justify him in
licensing his horse.

In view of the authorities and reason heretofore given,
we are of the opinion that no compensation can be recov-
ered for the services of the stallion without his owner or
keeper has procured a license as provided by law.

This conclusion dispenses with the necessity of consider-
ing whether the testimony in this case sustains the finding
of the court below upon the issues presented, for it clearly
appears from the proof, as well as from the rejected plead-

ing, that no such license had been procured licensing the stallion as required by law; hence it is immaterial whether the judgment of the court below was predicated upon a correct view of the law or not, its judgment being in fact correct, and in accordance with the law of the case. The judgment is therefore affirmed.