## Fruin-Colnon Contracting Co. v. Chatterson.

(Decided January 30, 1912.)

Appeal from Jefferson Circuit Court.
(Chancery Branch, First Division).

1. Contracts of Corporations—In Violation of Statute—Void.—Section 571 of the Kentucky Statutes provides in substance that all corporations doing business in this State shall at all times have in this State a known place of business and an agent thereat upon whom process may be served, and that it shall not be "lawful for any coporation to carry on any business in this State until it shall have filed in the office of the Secretary of State a statement signed by its president or secretary, giving the location of its office or offices and the name or names of the agent or agents thereat upon whom process may be served." It also provides that any corporation failing to comply with this section shall be guilty of a misdemeanor. This statute is a police regulation and a corporation doing business in this State, without complying with this section, cannot recover on contracts made and executed by it in the line of its business.

2. Same—Estoppel.—Any person who contracts with a corporation is estopped to deny its corporate existence or its charter power to contract in an action brought by it to enforce the contract.

3. Same—Plea of Estoppel, When Not Available.—Where a foreign corporation made a contract with the city to improve a street, the property owner who was not a party to the contract or consulted or advised with about it is not estopped from questioning the right of the corporation doing the work to recover the cost of it.

ADRIAN C. HUMPHREYS for appellant.

CHATTERSON & BLITZ for appellees.

Opinion of the Court by Judge Carroll—Affirming.

The appellant, a Missouri corporation, was awarded in April, 1909, by the Board of Public Works of the City of Louisville a contract for the construction of street improvements, a portion of which abutted on the property of appellee. Having completed the contract in August, 1909, it brought this action in 1910 against the appellee upon an apportionment warrant to enforce its lien upon her property to satisfy the cost of the improvement. For defense to the action, the appellee relied on Section 571 of the Kentucky Statutes, providing that:

"All corporations except foreign insurance compan-

ies formed under the laws of this or any other State, and carrying on any business in this State, shall at all times have one or more known places of business in this State, and an authorized agent or agents thereat, upon whom process can be served; and it shall not be lawful for any corporation to carry on any business in this State until it shall have filed in the office of the Secretary of State a statement, signed by its president or secretary; giving the location of its office or offices in this State, and the name or names of its agent or agents thereat upon whom process can be served; and when any change is made in the location of its office or offices, or in its agent or agents, it shall at once file with the Secretary of State a statement of such change; and the former agent shall remain, agent for the purpose of service until statement of appointment of the new agent is filed; and if any corporation fails to comply with the requirements of this section, such corporation, and any agent or employe of such corporation, who shall transact, carry on or conduct any business in this State, for it, shall be severally guilty of a misdemeanor, and fined not less than one hundred nor more than one thousand dollars for each offense.''

She set up that the appellant had failed to comply with this statute and hence could not recover against her on the contract made with the Board of Public Works for the street improvement. In a reply appellant admitted that when the contract was awarded and the work completed it had not complied with the statute, but averred that it did so afterwards and in November, 1909.

Chancellor Miller, now a judge of this court, ruled that under the facts admitted by the pleadings, the plaintiff could not recover and entered a judgment dismissing the petition. On this appeal, the only question presented is—did the failure of the appellant to comply with the statute before making the contract and completing the work under it deny it the right to recover the cost of the improvement.

A number of reasons are assigned by counsel for appellant why the judgment should be reversed, one of them being the contention that a person dealing with a corporation and contracting with it as such is estopped to deny its existence or its power to contract. And, it is said that this street improvement contract—although not made directly with appellee—was made by her

agent, the city of Louisville, and therefore, after the work had been completed and appellee has received the benefit thereof, she could not set up as a defense the want of power on the part of the corporation to make the contract. It has been adjudicated in a number of cases decided by this court, and is a well settled doctrine, that a person who contracts with a corporation is estopped to deny its corporate existence, or its charter power to contract, in an action brought by it to enforce the contract. This principle was first announced by this court in Bank of Galliopolis v. Trimble, 6 B. Mon., 601; and was followed in Jones v. Bank of Tennessee, 8 B. Mon., 122; Henderson, etc., R. Co. v. Leavell, 16 B. Mon., 359; Lail v. Mt. Sterling Coal R. Co., 13 Bush 32, and in many other cases and was subsequently incorporated in the law in Section 566 of the Kentucky Statutes, reading:

"No corporation organized under this chapter shall be permitted to set up or rely upon the want of legal organization as a defense to any action against it; nor shall any person transacting business with such corporation, or sued for injury done to its property, be permitted to rely upon such want of legal organization as a defense."

But in none of the cases above mentioned was the corporation involved acting in violation of an express statute in making the contract, or charged with having made a contract that it was forbidden by law to enter into. The plea of estoppel was made and sustained upon the theory that a person who deals or contracts with a corporation in its corporate name and capacity cannot afterwards rely upon some defect in its' organization to defeat a contract voluntarily entered into with it. It is therefore very clear that neither this line of cases nor the statute has any application to the question here made. In this case the plea does not raise the question that appellant corporation was not properly organized, or assail the legality of its existence, or question its charter power to make a contract of the character involved, but it is put distinctly upon the ground that the statute declares that "it shall not be lawful for any corporation to carry on any business in this State until it shall have filed in the office of the Secretary of State a statement signed by its president or secretary, giving the location of its office or offices in this State, and the name or names of its agent or agents thereat

upon whom process can be served," so that, we have no difficulty in putting these cases aside as wholly irrelevant to the question presented by this record.  There are, however, other cases more directly in point in which the doctrine of estoppel has been extended to embrace contracts that were made when one of the parties to the contract was forbidden by statute to contract until after it had complied with certain statutory requirements. Of this class of cases we might select Johnson v. Mason Lodge, 106 Ky., 838, which was followed in Aultman & Taylor Co. v. Mead, 109 Ky. 583, as a fair example.  In that case it appears from the opinion that Mason Lodge was an incorporated institution organized under the laws of this State, and that Johnson executed to it his note for borrowed money, upon which note the corporation brought suit.  As a defense to the action, Johnson set up that at the time of the execution of the note and the commencement of the action the corporation had not filed with the Secretary of State a statement showing the location of its office and the name of its agent or agents upon whom process could be served as required by Section 571 of the Kentucky Statutes, supra, and for this reason the obligation sued on was unenforcible.  In holding this defense untenable, the court without considering the effect of Section 571 on the contract, put its decision upon Section 566 of the Kentucky Statutes, supra, and the cases heretofore cited, holding that persons transacting business with corporations will not be permitted to rely upon the want of legal organization as a defense.  The opinion further distinguished the case of Vanmeter v. Spurrier, 94 Ky., 22; and Vannoy v. Patton, 5 B. Mon., 248, that will be hereafter noticed, upon the ground that:

"In the case of Vanmeter v. Spurrier the statute under consideration was one to protect the public against worthless fertilizers, and the case of Vannoy v. Patton from the sale of liquor without license;  *  *  *  the vice was in the contract itself, and they are therefore distinguished in this respect from this case, which only involves the idea of disability to sue; and it appears to us that the defenses relied on in this case are inconsistent, and neither of them is tenable."

It is worthy of notice that in this opinion the case of Smith v. Robertson, 106 Ky., 472, was not mentioned, although it would seem that the conclusion announced in the Johnson case conflicts with the conclusion reached

in the Smith case. In Smith v. Robertson, Smith was the owner of a stallion that was bred to a mare owned by Robertson under an agreement by which Robertson agreed to pay for the service fee $150.00. The action was brought by Smith to recover this fee. As a defense to the action, Robertson pleaded and relied upon Section 4201 of the Kentucky Statutes, providing that:

"Any person who shall engage in any business, or sell or offer to sell, any article on which a license is required, before procuring the license and paying the tax thereon, as required by law, shall be deemed guilty of a misdemeanor and, on conviction, be fined not less than fifty nor more than one thousand dollars for each offense, unless otherwise specially provided."

And averred that Smith had not, before the service charged for was rendered paid the annual license fee required by law for standing his stallion. And, the court held that as Smith was guilty of a violation of law in standing his stallion before procuring a license and paying the license fee, he could not recover on the contract with Robertson for the service of the stallion.

It is not however necessary in disposing of the case we have to attempt to reconcile the apparent conflict in these two opinions, nor is it required that we should either approve or distinguish the ruling in Johnson v. Mason Lodge, as, in that case, the doctrine of estoppel was applied to Johnson who had directly entered into the contract with the Mason Lodge that he was seeking to avoid. If the contract relative to the street improvement had been made between appellant and appellee, then we would have a case in all respects similar to Johnson v. Mason Lodge. But the contract sought to be enforced by appellant company was not made with appellee, or with any agent authorized to speak for her. She was not a party, so far as the record shows, to the contract, or advised with about it. The city without asking her consent or consulting her at all made the contract and we know of no principle in the law of estoppel that would preclude her from questioning a contract made under circumstances like this. As the appellee under our view of the law is not estopped from pleading the want of authority on the part of the appellant company to enter into the contract, because forbidden to do so by the laws of this State, the question recurs, should this statute be enforced against it to defeat the collection of the cost of the improvement. Upon this point the

argument is pressed by counsel for appellant that this statute was not intended to affect contracts made by a corporation that had not complied with the statute or to defeat its right to enforce contracts entered into by it, although in technical violation of the statute. It is said that the only penalty that should be imposed for a violation of this statute is the one fixed in the statute itself, and, that the exaction of this penalty satisfies any violation of the statute committed by the corporation. There are cases holding that where a penalty only is imposed, for the failure to comply with a statute, that persons who contract with the corporation and receive benefits from it under the contract will not be permitted to rely upon its non-compliance to defeat the contract while yet holding to the benefits. Especially is this held to be true in cases in which the statute was intended solely for revenue purposes, and where the contract entered into was in itself lawful. Thus, in Lindsey v. Rutherford, 17 B. Mon., 246, Lindsey purchased a bill of exchange upon which Rutherford was liable; and, the bill not being paid at maturity, Lindsey brought suit against Rutherford and the other obligors. They defended upon the ground that as Lindsey had never obtained a license to engage in the business of purchasing bills and notes, he could not enforce the contract, but the court put aside this defense as insufficient, saying, that as the statute was intended solely for revenue purposes, and did not prohibit the making of the contract attempted to be enforced, that the only penalty that could be imposed was the one inflicted by the statute for conducting the business without a license.

On the other hand in Franklin Ins. Co. v. Louisville & Arkansas Packet Co., 9 Bush, 590, foreign insurance companies instituted an action against the packet company to recover from it claims amounting to several thousand dollars. One of the defenses relied on by the packet company was that as the companies had failed to comply with the conditions prescribed by the laws of this State, they could not recover. In sustaining this defense, the court said:

"It seems to us clear that the act by its terms, details, and manifest objects, clearly imports a legislative purpose and intention not only to prevent certain violations of the act by the imposition of penalties, but to render it absolutely unlawful for foreign insurance corporations by their agents as in this case, to make contracts of in-

surance within the State, without complying with and in disregard of the provisions of the act. * * * Construing the statute as we do, as not intended merely as a means of raising revenue from the business of insurance, but to affect the validity of contracts of insurance made in violation of it—or, in other words, to prohibit the business itself so far as carried on in violation of the law—the contracts of insurance sought to be enforced in this case were illegal, and the court below properly refused to enforce them.''

In Vanmeter v. Spurrier, 94 Ky., 22, the statute provided that any person who should manufacture or sell any commercial fertilizer without a compliance with the statute regulating the sale of this article, should be subject to a penalty. The fertilizer company, without complying with the provisions of the statute, sold to Vanmeter fertilizer, and upon his failure to pay, brought suit to recover the amount due. Vanmeter defended upon the ground that the contract was not enforcible on account of the non-compliance by the fertilizer company with the statute, and the court held this defense good on the ground that although the statute did not prohibit the making of contracts by companies that had not complied with the statute or declare that such contracts should not be enforced, it was yet a statute to protect the public against the sale of fraudulent goods, and contracts made without compliance with it should be declared void—distinguishing the case of Lindsey v. Rutherford, supra, upon the ground that in the Rutherford case the statute was purely for revenue purposes and was not intended to inhibit the making of contracts, and no question of public policy was involved in its violation.

In Vannoy v. Patton, 5 B. Mon., 248, it was held that the vendor of spirituous liquors sold without paying a license could not recover the price of the article. And here again the court put the decision upon the ground that the sale of liquor was a business coming strictly within the police power of the State and the courts would not lend their aid to enforce a contract in itself unlawful.

In Bull v. Harragan, 17 B. Mon., 349, vendors of of lightening rods who sold without compliance with the statute regulating the sale of such articles were denied the right to recover on a contract upon the ground that the statute expressly provided that contracts made be-

fore compliance with it should be void. To the same effect is Mabry v. Bullock, 7 Dana, 337.

It may well be conceded that it would be difficult to reconcile the reasoning of the various opinions we have alluded to, and it is not necessary that we should attempt this task, as the case before us may easily be differentiated from those we have cited holding contracts enforcible. The statute relied on in the case before us is not a revenue statute in any sense of the word. It is a police regulation enacted for the benefit and protection of the citizens of the State and to enable persons desiring to bring actions against corporations to know upon whom service of process may be had. It not only imposes a penalty for its violation but it expressly provides that "it shall not be lawful for any corporation to carry on any business in this State until it shall have filed in the office of the Secretary of State a statement," etc. With the exception of the Johnson case, supra, this case arises under a statute differently worded from the statutes construed in the other cases cited; and, as the decision in the Johnson case was rested distinctly upon the ground that Johnson was estopped to make the defense that the contract was invalid, we feel authorized to say that the precise question before us has not heretofore been decided by this court.

With the question of etstoppel out of the way, the exact matter for decision is, will a foreign corporation be assisted by the courts of this State to enforce a contract that was entered into and completed at a time when it was unlawful for the corporation to carry on in this State the business it was engaged in and out of which the contract arose. The statute does not provide that contracts entered into before it has been complied with, shall be void or non-enforcible, nor does it use any language in reference to the contract; but, when a statute makes it unlawful to do business under certain conditions it seems to necessarily and logically follow that the doing of the business under the prohibited conditions is in itself unlawful. When the doing of the act is made unlawful, there is no reason why the statute should also declare that contracts made in violation of it should also be unlawful. When the law prohibits a thing, it is unlawful to do it, and the courts should not lend their aid to the enforcement of prohibited contracts. Courts are established to afford remedies to litigants who seek relief growing out of lawful transactions, and not to aid

those who would invoke their assistance to enforce contracts made in violation of law. Their chief purpose is to secure the observance of laws enacted for the safety and protection of life and property and the general well-being of the people, and it would be a startling departure from this purpose if they should also give relief to parties who were seeking to enforce contracts made in violation of law. Such a course of procedure would be a perversion of justice and convert the courts into instruments to aid law-breakers in place of punishing them. It is also argued that it would be a hardship on this corporation to lose the value of its work, but this furnishes no reason why it should obtain relief as there is scarcely a penal statute, the enforcement of which does not impose severe burdens; and, if the severity of the punishment should be treated as a reason for disregarding the statute, many beneficial laws would go unenforced.

Our attention has been called by counsel for appellant to authorities from other States holding that the courts will not deny relief in cases of this character, but will leave the offending corporations to be punished under the penalty feature of the statute. That there is much diversity of opinion on the subject under consideration to be found in the decisions of the courts of other States, can not be doubted by any person who has examined the cases but, we think the weight of authority supports the principle that when a statute expressly declares that it shall be unlawful to do business until its requirements have been complied with, a contract made in contravention of the statute will not be enforced by the courts. Buckley v. Humason, —— Minn., ——, 16 L. R. A., 423; McConnell v. Kitchens, 20 S. C., 430, 47 Am. Rep., 845; Johnson v. Hulings, 103 Pa. St., 498, 49 Am. Rep., 131; Henni v. Fidelity Trust & L. Co., 61 Neb., 744, 87 Am. St. Rep., 519; Tri-State Amusement Co. v. Forest Park Amusement Co., 192 Mo., 404; Randall v. Tuell, 89 Maine 443, 38 L. R. A., 143; Cincinnati Assurance Co. v. Rosenthal, 55 Ill., 85, 8 Am. Rep., 626 Chitty on Contracts, Vol. 2, page 1005; Page on Contracts, Vol. 1, Sec. 332. Where a statute is purely for revenue purposes and contains no prohibition against the making of contracts and does not declare that contracts made without obtaining the license shall be unlawful, the rule generally prevailing is that a contract made without obtaining the license is not void. Fairly v. Wappoo Mills,

44 S. C., 227, 29 L. R. A., 215; Vermont Loan & Tr. Co. v. Hoffman, 5 Idaho, 376, 37 L. R. A., 509. But, as this statute was not enacted for revenue purposes, our conclusion is that the prohibition against the corporation doing business in this State also prohibits the enforcement of contracts made by it.

Wherefore, the judgment of the lower court is affirmed.

Judge Miller not sitting.