Day, J.,
 

 dissenting. I am unable to concur in the reversal of the
 
 Todino case,
 
 111 Ohio St., 274, 145 N. E., 25, 38 A. L. R., 1118, and the construction placed upon Sections 6310-3 to 6310-14, General Code, known as the Motor Sales Act.
 

 The paramount question is what was the legislative intent in the passage of the act under consideration.
 

 In order to ascertain that intent, a consideration of the title is proper. The same provides: “An act to prevent traffic in stolen cars, require registration and bill of sale to be given in event of sale or change in ownership of motor vehicles.” 109 Ohio Laws, 330.
 

 In the first place, the interpretation placed upon the title in the majority opinion is far too narrow, in that it attempts to establish that the sole purpose of the act was to prevent traffic in stolen cars, and thus to reach a conclusion that the statutes' in question are exclusively penal in nature. An examination of the entire act discloses that the bill related to the single subject of the manner of acquiring and transferring title to motor vehicles. The language of the title is broad enough to sustain a construction that such was its purport, for no reference is made in the act itself to stolen cars, although the bills of sale and registration required by the act would tend to prevent such traffic.
 

 Again, these sections are found in Part Second of the General Code, Title II, to wit, Police Regula
 
 *589
 
 tions, appertaining to a wide range of matters relative to social and economic cqnditions upon which the state, in the exercise of its police power, finds it necessary to legislate. It is conceded that this act is a proper exercise of police power by the legislature, and, as indicated, it is placed in that portion of the General Code which affects civil rights and liabilities, even though a penalty may be provided, as shown by a wide range of subjects referred to in Part Second, Title II, Chapters 1 to 34, of the General Code.
 

 When the legislature desired to make a purely penal section with reference to motor vehicles, the same is found in the Penal Code, being Part Fourth, Title I, Chapter 5. It is evident that the legislature intended to distinguish between the exclusively penal sections with reference to motor vehicles, such as 6310-1 and 6310-2, relative to lights on automobiles, and 6310-3 to 6310-14, having to do with .the
 
 sale
 
 of motor vehicles, because a special provision was made in the Penal Code by the enactment of Section 12614-1, which 'specifically relates to Sections 6310-1 and 6310-2 and provides a penalty for the violations thereof; whereas, Sections 6310-3 to 6310-14 have no provision for their violation'made in the Penal Code, but the penalty is found in the act itself, to wit, Section 6310r14. If the legislature was not satisfied with- this assignment of section numbers by the attorney general, opportunity has been afforded to change or alter the same.
 

 That the legislative intent was to make sales in disregard of this act (Sections 6310-3 to 6310-14) not only unlawful, but void, is evidenced by Section 6310-4, which provides, “It shall be
 
 unlawful to
 
 sell,
 
 *590
 
 convey, give away, transfer, exchange, receive, purchase or obtain any ‘motor vehicle’ * * * within this state, except in the manner and subject to the conditions hereinafter provided,” and by Section 6310-9, providing: “Each bill of sale shall be duly verified by the seller or other person as defined in section 1 [G-. C. § 6310-3] of this act.
 
 *
 
 * * Any bill of sale not verified before delivery as herein-before provided shall be
 
 null and void and of no effect in law.”
 

 It is hardly to be presumed that the legislature intended that a bill of sale not verified before delivery should be “void and of no effect in law,” but that the sale itself should be lawful and enforceable which had ignored the requirement of giving any bill of sale at all. It is claimed that the act makes no provision declaring sales in violation thereof to be void, hence such sales are enforceable. Such provision was unnecessary, as it is a generally accepted doctrine that a statute, which penalizes an act prohibits it; that a penalty implies a prohibition. An illegal sale is a void sale.
 

 The early eighteenth century case of
 
 Bartlett
 
 v.
 
 Vinor,
 
 Carthew’s English King’s Bench Reports, 251, 90 Eng. Rep., 750, concludes with a note by Lord Chief Justice Holt that “Every contract made for or about any matter or thing which is prohibited and made unlawful by any statute, is a void contract, tho’ the statute itself doth not mention that it shall be so, but only inflicts a penalty on the offender, because a penalty implies a prohibition, tho’ there are no prohibitory words in the statute.”
 

 This doótrine has been quite generally followed in America, as evidenced by the following decisions:
 

 
 *591
 
 “A contract is void if prohibited by statute, though the statute only inflicts a penalty, because such penalty implies a prohibition.”
 
 Vanmeter
 
 v.
 
 Spurrier,
 
 94 Ky., 22, 21 S. W., 337.
 

 “If the statute imposes a penalty upon the act done, this will make the contract.void, in like manner as if it were in terms prohibited, because a penalty implies a prohibition.”
 
 Miller
 
 v.
 
 Post,
 
 83 Mass. (1 Allen), 434.
 

 “It is an established rule of law, supported by uniform authority, that when a, statute goes no further even than to impose a penalty for the doing of an act, a contract founded on such act as a consideration is void, although the statute does not pronounce it void, nor expressly prohibit it.”
 
 Dudley
 
 v.
 
 Collier & Pinckard,
 
 87 Ala., 431, 6 So., 304, 13 Am. St. Rep., 55.
 

 “The rule * *
 
 *
 
 is that where a statute .pronounces a penalty for an act, a contract founded on, such act is void, although the statute does not pronounce it void,- nor expressly prohibit it.”
 
 Berka
 
 v.
 
 Woodward, Treas.,
 
 125 Cal., 119, 57 P., 777, 45 L. R. A., 420, 73 Am. St. Rep., 31.
 

 “A forfeiture or penalty imposed * * * by * * * statute [upon specified contracts] implies a prohibition against such a contract,. although there were no prohibitory words to that effect: to be found in it.”
 
 Cook
 
 v.
 
 Pierce,
 
 2 Houst. (Del.), 499.
 

 “Contracts intended to promote, or requiring the performance of acts forbidden by statute are-void, and this is so though the statute does not so declare j but only inflicts a penalty for its violation upon the parties forbidden to do the acts.”
 
 Dillon
 
 v.
 
 Allen,
 
 46 Iowa, 299, 26 Am. Rep., 145.
 

 
 *592
 
 “Where a penalty is imposed by statute upon a party for entering into a contract, the imposition of the penalty, in law, amounts to an implied prohibition of the act for which the penalty is inflicted, and the contract is thereby rendered illegal and void.”
 
 Brackett
 
 v.
 
 Hoyt,
 
 29 N. H., 264.
 

 Other cases might be cited to the same effect, but the foregoing will announce the principle. ' It is quite true that other jurisdictions have reached different conclusions upon the question under consideration, and the decisions are not harmonious; each state being controlled, of course, by its own statutes. However, the following well-considered cases may be cited as illustrative of the view sought to be expressed in this minority opinion:
 

 In Michigan, where the statute is not essentially dissimilar to our own, it was held, in a late case (December, 1928), that the failure of a seller of a motor vehicle to comply with the mandatory requirements of Section 3, Act No. 46, Pub. Acts of 1921, as amended by Act No. 16, Pub. Acts of 1923, relating to delivery of certificate of title and registration invalidates the contract of sale for motor vehicles.
 
 Ittleson
 
 v.
 
 Hagan,
 
 245 Mich., 56, 222 N. W., 145.
 

 The case of
 
 Endres
 
 v.
 
 Mara-Rickenbacker Co.
 
 (1928), 243 Mich., 5, 219 N. W., 719, is in point, holding that in view of the purpose and language of Act 46, Section 4, Pub. Acts of 1921, making it crime to sell a car without delivering a certificate of title and registration as required by Act 16, Section 3, Pub. Acts of 1923, a sale or transfer in violation of such statute is void. In the opinion it is said:
 

 “The decisive question is, Which of the defend
 
 *593
 
 ants owned the car? Is the sale void for the dealer’s violation of the statute (Section 3, Act 16, Public Acts of 1923), in failing to deliver to Pushkin ‘an affidavit of conveyance or assignment in such form as the secretary of state shall prescribe, to which shall be attached the assigned certificate of title received by such dealer’? By section 4 of Act No. 46, Public Acts of 1921, it was a crime punishable by fine or imprisonment, or both, to sell a motor vehicle without complying with the provisions of section 3 above quoted from. The legislature provided penalty for such violation, fine or imprisonmentL or both. It did not expressly provide that the sale or transfer without such compliance be void or fraudulent. If the courts are to add such penalty, further than that specifically given by the legislature, it must clearly appear from the statute that the legislature so intended. See
 
 Dunlop
 
 v.
 
 Mercer
 
 (C. C. A.), 156 F., 545, and 13 Corpus Juris, 422.
 

 “Among other things, the title of Act No. 46, Public Acts of 1921, declares its purpose (to regulate purchase and sale or other transfer of ownership’ and ‘to facilitate the recovery of motor vehicles * * * stolen.’ The act is designed to discourage and to prevent stealing of automobiles, to protect the public against crime. It states definitely a rule of sale or transfer of automobiles, and it provides the stated penalty for violation thereof. In
 
 Cashin
 
 v.
 
 Pliter,
 
 168 Mich., 386, 134 N. W., 482, Ann. Cas., 1913C, 697, it was said: ‘The general rule is well settled that, where statutes enacted to protect-the public against fraud or imposition, or to safeguard the public health or morals, contain á pro
 
 *594
 
 hibition and impose a. penalty, all contracts in violar tion thereof are void.’
 

 “See, also,
 
 Edward
 
 v.
 
 Ioor,
 
 205 Mich., 617, 172 N. W., 620, 15 A. L. R., 256, and cases cited.
 

 “In view of the purpose and . language of the-statute, , we think it was the intent of the legislature that a sale or transfer of an automobile in violation of the provisions of the act. should be. void * *
 

 The Kansas statute is very similar to that of Ohio, the Supreme Court of that state,
 
 in Hammond Motor Co.
 
 v.
 
 Warren,
 
 113 Kan., 44, 213 P., 810, having held: “The purchase of an automobile in total disregard of a statute governing the sale and transfer of such,property is void and affords the purchaser no defense in a replevin action instituted by a plaintiff having a lawful claim to the property.”
 

 See, also,
 
 State, ex rel. Connecticut Fire Ins. Co, of Hartford, Conn.,
 
 v.
 
 Cox et al., Judges,
 
 306 Mo., 537, 268 S. W., 87, 37 A. L. R., 1456: “The provision of the Motor Vehicle Act * * * requiring the assignment by the holder of -a certificate of ownership of an automobile, in case of sale, to be made upon the. back of. the certificate and returned as- a part of said certificate to the commissioner, is mandatory, and therefore the execution and delivery of a separate bill of sale, by such owner, to a purchaser, is not a substantial compliance with said, law.”
 

 The rule as expressed in the cases above cited, to which others might be added, seems to me highly salutary and so clearly within the intent, of. the legislature that I feel .it my duty to express my regret that the case, of
 
 Ohio Farmers’ Ins. Co.
 
 v.
 
 Todino
 
 
 *595
 
 should not be adhered to by this court. It construed a statute in existence for over eight years, and, since its decision five years ago, it has been followed by the lower courts of this state and elsewhere. It announced a rule of property which was safe, sound, and in the interest of the public good.
 

 In
 
 Morris
 
 v.
 
 Firemen’s Ins. Co. of New Jersey,
 
 121 Kan., 482, 247 P., 852, 52 A. L. R., 696, the
 
 Todino case
 
 was quoted and followed with approval, the court using the language, “The opinion is instructive and convincing,” and quoting at length therefrom.
 

 The case of
 
 Helwig
 
 v.
 
 Warren State Bank,
 
 115 Ohio St., 182, 152 N. E., 298, is referred to in the majority opinion. In that case both Helwig and the bank had
 
 complied
 
 with the Motor Sales Act by recording their bills of sale in the office of the clerk of courts as persons “to whom title has in any manner been passed to a motor vehicle,” and it was held that Helwig having failed to take advantage of the notice of the claim of the bank on file in the office of the clerk of courts when he bought the car in question and placed his own bill of sale on file, the printed record at page 21 disclosing that he had
 
 not
 
 examined the chattel mortgage records, or that the bank had done anything to mislead him, that the existence of the bank’s claim was readily ascertainable by Helwig by examining the public records, as between the bank and him the equities of the bank were superior; equity aiding the vigilant and not those who slumber upon their rights. If Helwig, the second purchaser, had examined the public records in the clerk’s office, he would have discovered the bank’s bill of sale and might have pro
 
 *596
 
 tected himself. Thus, one of two innocent purchasers must lose; and it was held that the one who might have protected himself by exercising diligence should suffer the loss.
 

 However, Helwig purchased with constructive knowledge of the filing by the bank of its bill of sale, and he could get no better title than Snyder, the seller, had a right to give; and when he purchased the car Snyder had already sold to the bank. Thus Helwig had constructive knowledge of the filing by the bank of its bill of sale, and he had no standing in court against a claimant who had complied with Section 6310-10, General Code, by filing prior to his purchase or filing, and the statutes afforded opportunity for Helwig to have protected himself as above indicated. The facts are so dissimilar in either of the cases at bar that we see no purpose in reversing the Helwig case.
 

 The case of
 
 Warren People’s Market Co.
 
 v.
 
 Corbett & Sons,
 
 114 Ohio St., 126, 151 N. E., 51, relates to the sale of stock in violation of the so-called Blue Sky Law. The gist of the decision is in the first syllabus: “In construing a statute which imposes specific penalties for its violation, the court must examine the entire act to determine whether or not it was the purpose of the legislature, in addition to imposing express penalties for the violation of the law, to render void any contract based on the prohibited act.”
 

 The plain purpose of the Motor Sales Act was to provide for transfer of title to motor vehicles by duly executed bills of sale and the filing thereof in the office of the clerk of courts, to protect the public in the possession of its motor vehicles, now that
 
 *597
 
 transportation of freight and passengers by motor has practically superseded all other means of local transportation, such act affecting nearly every individual in the community; while the sale of stocks, bonds, etc., of corporations and similar organizations is a vastly different matter and affects a much more limited , number and class of people. The records of corporations as to stocks and bonds, etc., the method of dealing therein, are all so different from motor sales that the legislature may well have had a very different intent in passing the Motor Sales Act and the so-called Blue Sky Act. Under the latter act, certain stocks are exempt from its operation; while under the Motor Sales Act there are no exemptions whatsoever. The two acts are so dissimilar in subject-matter, operation, and purpose that I cannot find the case of
 
 Warren People’s Market Co.
 
 v.
 
 Corbett & Sons, supra,
 
 controlling in determining the legislative intent as disclosed in the Motor Sales Act. I quite agree with the syllabus above quoted, which gives the rule that the legislative intent is to be the determinative factor; but that by the passage of the Motor Sales Act the legislative intent was to create exclusively an addition to the Criminal Code, I cannot concede.
 

 A void contract is one which has no legal force and which for that reason cannot be enforced. An unlawful contract is one to do an act which the law forbids or to omit an act which the law enjoins, and for that reason is non-enforceable. The object of all laws is to protect life, property, and legal rights, to enforce legal obligations, and to promote justice and honest dealing. It is the business of the law and its administration to enforce the performance
 
 *598
 
 of contracts that are not forbidden by law. There are classes of contracts the enforcement of which will not be promotive of the general welfare, and these contracts the courts, following the maxim that “the general welfare is the highest law,” refuse to enforce. The sovereign power of the state, acting through the legislature, has provided that the transfer of motor vehicles without the formalities required in Sections 6310-3 to 6310-14 is unlawful, and, such being without the pale of the law, it does not lie in the power of the courts by construction to make that lawful which the law plainly says is unlawful. Under such circumstances, the courts should leave the parties where they have placed themselves.
 

 In my judgment, it was not the intent of the legislature, in the passage of the Motor Sales Act, to establish the principle that an enforceable title in the sale or transfer of a motor vehicle may be obtained by the performance of an unlawful act.