## Oliver Company v. Louisville Realty Company.

(Decided December 19, 1913).

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Corporations—Foreign Corporations—Cannot Enforce Contracts Without Complying with the Registration Laws of the State—Section 571 of Statutes.—A foreign corporation cannot enforce the collection of the amount due on a contract entered into in the execution of its business in this State if it has not complied with section 571 of the Kentucky Statutes providing that all corporations must have a known place of business in this state and an authorized agent thereat upon whom process may be served.

2. Corporations—Foreign Corporations—Unlawful to Do Business in State Without complying with Section 571 of the Statutes—Effect on Contracts.—The statute does not expressly declare that contracts made before complying with it shall be void or not enforceable, but the fact that the statute imposes a penalty for engaging in business in violation of it has the same effect and accomplishes the same end as if the statute had expressly declared the invalidity of contracts made without observing its conditions.

3. Corporations—Foreign Corporations—Party Contracting With Not Estopped to Set Up as Defense Failure of Corporation to Comply with Section 571.—A person who makes an otherwise valid contract with a foreign corporation that has not complied with the provisions of Section 571, will not be estopped to rely on this defense if sued by the corporation. The effect of allowing the plea of estoppel would be to defeat one of the chief purposes of the statute, as there are few cases in which business transactions are not directly conducted between the corporation and the persons affected by the contract.

4. Statutes—Purpose of Section 571 of the Kentucky Statutes.—This section was intended as a police regulation for the protection of the people of the State who have a right to know whether the party they are dealing with is an individual or a corporation.

5. Statutes—Sections 566 and 571—Construction and Effect of.— Section 566 relates to defects in the organization of a corporation and a person dealing with a corporation will not be permitted to raise the question that it was not legally organized; while section 571 relates exclusively to the matter of a corporation doing business in this State without having an agent and a place of business in the State, and was enacted pursuant to Section 194 of the Constitution.

6. Stare Decisis—Importance of Adhering to Rule of.—Courts of last resort should, unless in exceptional cases, adhere to rules of law announced in long established decisions that have become a part of the jurisprudence of the State, on the faith of which people have transacted business, entered into contracts and conducted in a general way their affairs.

7. Stare Decisis—Definition of.—The rule of stare decisis, stated in simple form and considered in its relation to private affairs is really nothing more than the application of the doctrine of estoppel to court decisions. It finds its support in the sound principle that when courts have announced, for the guidance of the public, certain controlling principles of law, they ought not, after these principles have been promulgated, withdraw or overrule them to the disturbance of contract and property rights that have been entered into on the faith and credit that the principles announced were the law of the land.

8. Stare Decisis—Parties Who Are Not Entitled to Rely on Rule of. —The doctrine of stare decisis cannot be relied on by a party who has not in good faith been deceived by the decision under which he claims to have acted, and when it appears that a party was not misled to his prejudice by reliance on a decision, the court will not feel estopped to overrule it by the insistence of the party claiming to have acted under it that it would overturn contracts and engagements that he had entered into on the faith of it.

9. Stare Decisis—Limitation Upon Rule of.—A court of last resort is not irrevocably bound to follow opinions that in the light of present circumstances and conditions seem to be erroneous, and when a court of last resort, after mature deliberation, concludes that a question involving important public or private rights has been erroneously decided, it should not feel bound to adhere to the erroneous decision, although overruling it may affect prejudicially private interests. The rule is not in any sense ironclad, and the future and permanent good of the public is to be considered rather than any particular right or interest.

10. Stare Decisis—Decisions Cannot Be Overruled so as to Have the Effect of Impairing the Validity of Contracts.—The rule is that if a contract when made was valid by the laws of the State as administered in its courts of last resort, its validity and obligation cannot be impaired by subsequent decisions of its courts, and the construction which the highest court of a state has given a statute of the State becomes a part of the statute, and a change of judicial construction, where it affects the validity

of a contract, will have the same effect as a legislative amend-
ment that undertakes to impair the obligations of a contract.

11. Stare Decisis—When Party Not Entitled to Invoke the Protec-
tion of the Rule That Decision Cannot be Overruled so as to Af-
fect His Rights.—When a party, by reason of his violation of
law, puts himself in the attitude of losing his right to enforce
a contract demand created under a contract that he claims to
have entered into on the faith of a decision, he cannot claim
that subsequent decisions overruling the one he relied on im-
paired the obligation of his contract, as a party cannot invoke
the protection of beneficial rules of law intended to save from
loss law-abiding citizens, when he made the contract in ques-
tion in violation of a statute of the State.

HELM BRUCE and BRUCE & BULLITT for appellant.

TRABUE, DOOLAN & COX for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The question for decision in this case is this: Is it
a good defense to an action brought in a State court by
a foreign corporation to enforce the collection of the
amount due on a contract entered into in the execution
of its business here engaged in, that it has not complied
with section 571 of the Kentucky Statutes reading:

"All corporations except foreign insurance compa-
nies formed under the laws of this or any other State,
and carrying on any business in this State, shall at all
times have one or more known places of business in this
State, and an authorized agent or agents thereat, upon
whom process can be served; and it shall not be lawful
for any corporation to carry on any business in this
State until it shall have filed in the office of the Secre-
tary of State a statement, signed by its president or
secretary, giving the location of its office or offices in
this State, and the name or names of its agent or agents
thereat upon whom process can be served; and when
any change is made in the location of its office or offices,
or in its agent or agents, it shall at once file with the
Secretary of State a statement of such change; and the
former agent shall remain agent for the purpose of
service until a statement of appointment of the new
agent is filed; and if such corporation fails to comply
with the requirements of this section, such corporation
and any agent or employe or such corporation, who shall
transact, carry on or conduct any business in this State,
for it, shall be severally guilty of a misdemeanor, and

fined not less than one hundred nor more than one thousand dollars for each offense.''

The Oliver Company is a Tennessee corporation and entered into a contract with the Louisville Realty Association to do certain work for it in the construction of a building by the latter company in the city of Louisville, Kentucky. The contract fixed the compensation that should be paid to the Oliver Company for the work it agreed to do, but during the progress of the work certain changes were made in the specifications, and as a result of differences arising between the parties to the contract as to the amount that should be paid, this suit was brought by the Oliver Company to recover from the Realty Company the sum it claimed was due it on the contract.

To this suit several defenses were made going to the merits of the claim asserted by the Oliver Company, but the issues arising on the merits of the controversy we do not find it necessary to discuss. The only question that we need concern ourselves with is the sufficiency of the defense relied on by the Realty Company that the Oliver Company could not maintain the action because it had failed to comply with the statute quoted. The lower court ruled that the failure of the Oliver Company to observe the requirements of this statute denied it the right to maintain the action, and dismissed its suit, and in the correctness of this decision we concur.

It will be observed that this statute expressly provides that it shall not be lawful for any corporation to carry on any business in this State until it shall have observed the requirements of the section, and further subjects to a penalty any corporation undertaking to transact, carry on or conduct any business in this State without observing the section, although it does not in terms declare that any contract made by a corporation before complying with the statute shall be void or not enforceable.

The fact, however, that the statute does not expressly declare that contracts made before complying with the section shall be void or not enforceable, does not weaken the effect of the statute as a prohibition against the enforcement of contracts made by a corporation in violation of the statute. In other words, the declaration of the statute that it shall not be lawful for any corporation to carry on any business in this State until it

shall have observed the requirements of the statute, and the imposition of a penalty for engaging in business in violation of it, has the same effect and accomplishes the same end as if the statute had expressly declared the invalidity of contracts made without observing its conditions.    Upon this point we may repeat what was said in the case of Fruin-Colnon Contracting Co. v. Chatterson, 146 Ky., 504, where this question was discussed:

  ·  "The statute does not provide that contracts entered into before it has been complied with shall be void or non-enforceable, nor does it use any language in reference to the contract; but, when a statute makes it unlawful to do business under certain conditions, it seems to necessarily and logically follow that the doing of the business under the prohibited conditions is in itself unlawful.   When the doing of the act is made unlawful, there is no reason why the statute should also declare that contracts made in violation of it should also be unlawful.   When the law prohibits a thing, it is unlawful to do it, and the courts should not lend their aid to the enforcement of prohibited contracts.   Courts are established to afford remedies to litigants who seek relief growing out of lawful transactions, and not to aid those who would invoke their assistance to enforce contracts made in violation of law.   Their chief purpose is to secure the observance of laws enacted for the safety and protection of life and property, and the general well-being of the people, and it would be a startling departure from this purpose if they should also give relief to parties who were seeking to enforce contracts made in violation of law.   Such a course of procedure would be a perversion of justice and convert the courts into instruments to aid law-breakers in place of punishing them."

The principle thus announced is supported by abundant authority for it is a generally prevailing rule that a contract is void if prohibited by statute, though the statute only inflicts a penalty and does not in terms declare illegal contracts made in violation of it.   Lindley v. Rutherford, 17 B. Mon., 246; Vanmeter v. Spurrier, 94 Ky., 22; Harris v. Runnels, 12 Howard, U. S., 78, 13 L. Ed., 901; Wilson v. Spencer, 1 Rand., 76 (Va.), 10 Am. Dec., 491; Harrison v. Berkley, 1 Strobhart's Law, (S. C.) 525, 47 Am. Dec., 578; Woods v. Armstrong, 54 Ala., 150, 25 Am. Rep., 671; Columbia Bank & Bridge

Co. v. Haldeman, 7 W. & S., 233, (Pa.) 42 Am. Dec., 229; Roby v. West, 4 N. H., 285, 17 Am. Dec., 423, and Levison v. Boas, 150 Cal., 185, 12 L. R. A. (n. s.), 575.

But passing this a vigorous assault is made on the decision of the lower court denying to the Oliver Company the right to maintain the action it had instituted, and it is earnestly pressed on our attention that the statute should not be so construed as to prohibit a corporation that had failed to comply with the statute from bringing suit to enforce contracts made in the prosecution of its business in this State. The argument is made that persons who make otherwise valid contracts with foreign corporations should be estopped to deny the right of the corporation to enforce them.

It is of course at once apparent that the effect of such a construction of this statute would be to destroy the life and vigor of the feature of it now under consideration. So construed it would virtually have no meaning or effect at all. It would be to say in substance to a corporation: "It is true the statute expressly prohibits you from doing business in this State until you have complied with its simple provisions, but if it does not suit your convenience or your interest to do so, your failure will not prejudice any rights that you may have. If you choose to observe these requirements, well and good, but if you don't, you can yet carry on any business you please and make as many contracts as you wish and the courts of the State are open to your pleas, and, notwithstanding your dereliction of duty and your violation of law, will afford you all the remedies that could be afforded if you had seen proper to observe the statute."

If corporations may thus lightly treat the laws of this State, if they may ignore them at their pleasure, and comply with them or not as suits their convenience, free from any of the civil disabilities imposed by the statute, the legislature of the State might as well cease the enactment of laws intended to protect the people of the State in their dealings with corporations. The statute, as may be readily seen, does not impose any harsh or unreasonable conditions. A literal compliance with its simple requirements is both easy and inexpensive, and no good reason can be assigned why a corporation undertaking to do business in the State should not be obliged to observe its provisions. It is a useful statute and was intended as a police regulation for the pro-

tection of the people of the State who have a right to know whether the party they are dealing with is an individual or a corporation.

It is a notorious fact that the country is full of corporations engaged in every imaginable line of business, with their agents going here and there and everywhere and many of the people dealing with them do not know where the home of the corporation is, or if they do know, would find it impracticable to seek relief by suits in foreign jurisdictions. Except for this statute they would not, in many instances, know on whom process could be served or in what county a suit against the corporation could be brought, and thus, in many cases, would be left virtually remediless. To relieve in a measuse the disadvantages our citizens as a result of this condition were placed under in their dealings with corporations, the legislature undertook in this statute to say that when a corporation, whether foreign or domestic, desired to engage in business in this State, it should at all times have an agent at a known place of business in this State upon whom process could be served and to whom the citizens of the State might look if it became necessary to seek redress in the courts of the State; so that any citizen desiring to institute an action against a corporation might, by writing to the Secretary of State, learn who and where its agent was and where its place of business was, and thus be able to secure such relief as the circumstances of the case seemed to demand.

So universally recognized is the wisdom and propriety of this character of legislation that every State in the Union, save possibly two, have adopted statutes in substance the same as ours, and the courts of these different States, as we will presently point out, have, with few exceptions, given to these salutary statutes the same construction and the same meaning and effect that we have.

As said by the United States Circuit Court of Appeals in Pittsburgh, etc., Co. v. West Side Belt Ry. Co., 154 Fed., 929, in speaking of a like statute: "This act is a salutary one, for the protection of persons transacting business with foreign corporations. The facility with which irresponsible corporations are created, frequently with no assets within the jurisdiction where business is transacted, would frequently leave creditors without any chance whatever of collecting their claims

were it not for acts requiring registration where business is transacted. This enables the creditors to bring the foreign corporation within the jurisdiction of the courts where the obligations are created; and, in order that the provisions of those laws may be complied with, it is necessary that they should receive a reasonably strict enforcement."

The purpose of the statute is also well expressed by the Supreme Court of Pennsylvania in Delaware, etc., Co. v. Bethlehem, etc., Ry. Co., 204 Pa., 22, where the court said: "The purpose of the act is to bring foreign corporations doing business in this State within the reach of legal process. This purpose is not accomplished by a registration of the corporation at the pleasure of its officers, or when it may be to their interest to appeal to our courts. The act is for the protection of those with whom it does business, or to whom it may incur liability by its wrongful acts; and nothing short of a registration before the contract that it seeks to enforce is made can give it a right of action. Any other construction of the act would violate its plain words and wholly defeat its object by affording protection to the corporation and denying it to the public."

It may further be observed that the effect of allowing the plea of estoppel would be to defeat one of the chief purposes of the statute. For example, if every person who made a contract with a corporation should be denied the right to set up, when sued by the corporation, the defense that when making the contract it acted in violation of law, instances would be very rare in which the statute could be effectively interposed and the corporation punished for failing to observe it. There are few cases in which business transactions are not directly conducted between the parties affected, or others acting for them, and it is manifest that if the party within the law should be estopped to make the defense that the other party was without the law, the party who was guilty of violating the law would feel assured that his violation would not subject him to any disadvantage. In short, if the statute is to be given effect, the doctrine of estoppel should not be applied.

So apparent is the fact that the adoption of the doctrine of estoppel would virtually nullify the purpose of the statute, that the authorities generally refuse to assent to it, although the failure to apply this rule may

in some cases work a hardship on the delinquent corporation.

It is equally plain that the fact that the enforcement of the statute may work hardships on corporations that fail to obey it and sometimes prevent them from collecing just debts, cannot, without ignoring the legislative intent, be allowed to defeat the object sought to be accomplished by the enactment of the law. Every person who violates the law puts himself in the attitude of being required to pay the penalty for the infraction, but, although the delinquency may subject him to punishments, civil or criminal, this of course furnishes no reason why the statute should not be enforced. The individual who violates a penal statute may expect to pay the penalty, and so a corporation that violates the civil features of a statute is not in any position to complain if it, too, must pay the penalty.

These views in different forms of expression have been frequently announced. Thus in Thompson on Corporations, second edition, vol. 5, sec. 6712, it is said: "Such statutes are intended for the protection of the citizens of the State who deal with such foreign corporation, and there are many reasons why a person, after dealing with such a corporation, should have the right to insist on compliance with the statute, when the corporation sues to enforce the contract. The effect of the cases holding otherwise, is to make such a statute an instrument of fraud as against persons whom it was intended to protect, and the doctrine of estoppel cannot be extended so far as to aid a foreign corporation in doing what was forbidden by statute."

In Cyclone Mining Co. v. Baker Light & Power Co., 165 Fed., 996, the court, in answering the argument that the doctrine of estoppel should be applied, said: "Nor are the defendants estopped, by reason of their contractual relations with the plaintiff, from insisting that the contract is void, and the plaintiff without legal right or capacity to sue for the breach thereof, because, if so estopped, the plaintiff would be permitted to take advantage of its own offending acts done in derogation and even in defiance of the law. It would be a revolting doctrine, fraught with inconceivable deleterious results, if a foreign corporation could come into a state not its own, and there carry on a business in direct defiance of the provisions of law by which it may capacitate itself for the transaction of business therein, and then vali-

date its acts because, forsooth, parties had dealt with it; for but few others have cause for suit except those having contractual relations in some form with such corporations.''

Out of a large number of cases illustrating the rule that a corporation or an individual that has made a contract for carrying on a business in violation of law or without having complied with statutory requirements, cannot enforce the collection of his or its demands created in carrying on the business, and that the defendant, although the beneficiary of the unlawful transaction, when sued is not estopped to raise the question of the disability of the plaintiff to maintain the suit, we may select the following: Smith v. Robertson, 106 Ky., 472; Franklin Insurance Co. v. Louisville & Arkansas Packing Co., 9 Bush, 590; Bull v. Harragan, 17 B. Mon., 349; Woods v. Armstrong, 54 Ala., 150; 25 Am. Rep., 671; Heilman Brewing Co. v. Piemeisl, 85 Minn., 121, 88 N. W., 441; Delaware R. Q. & C. Co. v. Bethlehem Ry. Co., 204 Pa., 22, 53 Atl., 533; United Lead Co. v. Reedy Elevator Mfg. Co., 222 Ill., 199, 6 A. & E. Ann. Cases, 637; Cary-Lombard Lumber Co. v. Thomas, 92 Tenn., 587; Seamans v. Temple Co., 105 Mich., 400, 55 Am. St. Rep., 457; Commonwealth Mutual Fire Ins. Co. v. Hayden, 60 Neb., 636, 83 Am. St. Rep., 545; Tri-state Amusement Co. v. Forest Park Highlands Amusement Co., 192 Mo., 404, 4 L. R. A. (n. s.), 688; State Bank of Greentown v. Lawrence, 177 Ind., 515, 42 L. R. A. (n. s.), 326; Strout Co. v. Howell (Del.), 85 Atl., 666.

Another argument advanced by counsel for the Oliver Company is rested on the doctrine of *stare decisis.* In support of this contention, our attention is called to the fact that in Johnson v. Mason Lodge, 106 Ky., 838, decided in 1899, this court held that a person who contracted with a corporation that had failed to comply with the statute here in question would be estopped when sued by the corporation to set up as a defense the illegality of the transaction, and it is said that the principle announced in this case was followed in Aultman v. Mead, 109 Ky., 583, and Hallam, Receiver v. Ashford, 24 Ky. L. R., 870, and, therefore, following the rule of *stare decisis,* this court should now adhere to these opinions. In other words, the effect of the argument is this, that the Oliver Company felt authorized to violate this statute because this court said in Johnson v. Mason Lodge that it might do so with impunity, and repeated this as-

surance of protection in the Ashford and Mead cases subsequently decided.

It might here be noted that Johnson v. Mason Lodge and the two cases that follow it, were virtually overruled in Fruin-Colnon Contracting Co. v. Chatterson, 146 Ky., 504, but as this case was decided subsequent to the transaction of the business out of which this litigation arose, it cannot be said to deprive the Oliver Company of the right to rely on the doctrine of *stare decisis,* if the invocation of that doctrine saves it from the penalty of the statute.

Before, however, taking up directly the question of *stare decisis* it may be well to notice with more care the decision in Johnson v. Mason Lodge. The opinion in that case discloses that Mason Lodge was a Kentucky corporation and a branch of the Independent Order of Odd Fellows. It sued Johnson to recover a sum of money it had loaned him. In defense of the suit, he set up that the corporation was not legally organized, and furthermore that it had not complied with section 571 of the statute, and for these reasons could not enforce collection of the debt. The court, after discussing at length the proposition that Johnson was estopped to deny the legality of the corporate existence of the Mason Lodge, took up the question of the non-enforcibility of the contract because the corporation had failed to comply with section 571 of the statute, and disposed of it in a few words adversely to the contention of Johnson. The opinion makes it perfectly apparent that the entire reasoning of the court was devoted to consideration of section 566 of the statute, providing that:

"No corporation organized under this chapter shall be permitted to set up or rely upon the want of legal organization as a defense to any action against it; nor shall any person transacting business with such corporation, or sued for injury done to its property, be permitted to rely upon such want of legal organization as a defense"; and that little or no attention was given to the effect on the contract of section 571. But, nevertheless, it is fair to say that the court held in this opinion that the failure of this corporation to comply with section 571 did not defeat its right to enforce the collection of the contract sued on.

In the Ashford case all that was said on the point under consideration is this: "In Johnson v. Mason Lodge it was held that one who is sued upon a contract

made with a corporation is estopped from relying upon the failure of the corporation to comply with the provisions of section 571. As this question was very thoroughly considered in that case and has been followed in quite a number of subsequent decisions of this court, it is unnecessary for us again to consider the question.''

In the Mead case the only reference to this question is this: ''The objection that appellants did not comply with section 571, of the Kentucky Statutes is fully answered in the opinion of the court in the case of Johnson v. Mason Lodge, and it will, therefore, be unnecessary for us to again consider that question.''

It will thus be seen that while in three opinions it was held that section 571 of the statute did not obstruct the right of a delinquent corporation to enforce a contract made with it, in no one of these opinions was the question examined with any degree of care. In the Johnson case we think the court fell into the error of confusing an *ultra vires* contract with an unlawful contract and treating section 571 as a companion section to section 566, and this error seems to have been followed in the two subsequent cases. It is of course plain that section 566 and section 571 relate to entirely distinct subjects. They have not the remotest connection with each other except in so far as they relate in a general way to corporations. They were enacted for different reasons and to accomplish different purposes. Section 566 relates to defects in the organization of a corporation and so states, while section 571 relates exclusively to the matter of a corporation doing business in this State without having an agent and a place of business in this State. Fruin-Colnon v. Chatterson, 146 Ky., 503.

As said in the Johnson case, it has been repeatedly decided, both by this court and others, that a person dealing with a corporation will not be permitted to raise the question that it was not legally organized, and section 566 merely put into the form of a statute a rule that a long line of court decisions had made a part of the law of the State.

On the other hand, the subject matter of section 571 first made its appearance in the history of the State in 1893 when it was adopted as a part of the statute law of the State, and it was put into the statute in obedience to section 194 of the Constitution, providing that ''All corporations formed under the laws of this State, or carrying on business in this State, shall, at all times,

have one or more known places of business in this State, and an authorized agent or agents there, upon whom process may be executed, and the General Assembly shall enact laws to carry into effect the provisions of this section.''

Under these circumstances the question now before us, put in simple form is, shall section 571 of the statute, enacted pursuant to section 194 of the Constitution of the State stand, or shall the decision of this court in Johnson v. Mason Lodge stand? The decision and the statute are in conflict, and if the doctrine of *stare decisis* as sought to be applied is to control, the decision must prevail and a valuable part of the statute be in effect expunged.

We are not unmindful of the importance of courts of last resort adhering to rules of law announced in long establised decisions that have become a part of the jurisprudence of the State, and on the faith of which people have transacted business, entered into contracts and conducted in a general way their affairs, and we should be slow to overrule any opinion that might unsettle property rights acquired on the faith of the opinion overruled or that might prejudice the rights or interests of persons who had entered into engagements in reliance upon the fact that the opinion assailed was the law of the land.

As said in Kent's Commentaries, vol. 1, sec. 475: ''When a rule has once been deliberately adopted and declared, it ought not to be disturbed unless by a court of appeal or review and never by the same court, except for very cogent reasons, and upon a clear manifestation of error; and if the practice were otherwise it would be leaving us in a perplexing uncertainty as to the law.'' To the same effect are Farrior v. New England Mortgage Security Co., 92 Ala., 176; Hasket v. Maxey, 134 Ind., 360, 19 L. R. A., 379; Vermont R. Co. v. Vermont Central R. Co., 63 Vt., 23, 10 L. R. A., 562, and many other cases referred to in these opinions.

But the rule of *stare decisis,* stated in simple form and considered in relation to its effect upon private affairs is really nothing more than the application of the doctrine of estoppel to court decisions. It finds its support in the sound principle that when courts have announced for the guidance and government of individuals and the public, certain controlling principles of law, or have given a construction to statutes upon which individuals and the public have relied in making contracts,

they ought not, after these principles have been promulgated and after these .constructions have been published, withdraw or overrule them, thereby disturbing contract rights that had been entered into and property rights that had been acquired upon the faith and credit that the principle announced or the construction adopted in the opinion was the law of the land.

In the correct application of the rule of *stare decisis* we fully concur and do not propose in this opinion to announce any views that would impair or overthrow its efficiency when properly understood and applied. Later in the opinion we will again advert to the necessity for an adherence to the rule of *stare decisis* when properly invoked to protect contract or property rights.

It, however, seems to us apparent that the doctrine of *stare decisis* giving to it what may be called a personal application cannot be relied on by a party who has not in good faith been deceived by the decision under which he claims to have acted, and when it appears that a party was not misled to his prejudice by reliance on a decision that the court rendering it subsequently concluded was erroneous, the court will not feel estopped to overrule it by the insistence of the party claiming to have acted under it that it would overturn contracts and engagements that he had entered into on the faith of it.

Let us see now for a moment if the Oliver Company is in a position to assert that relying on Johnson v. Mason Lodge it did not observe this statute.

It will be observed that the statute not only subjects the offending corporation to the civil disability of denying it the right to maintain an action but it also subjects it to a fine under the criminal law of the State; and if it should be said that the civil disability was removed by construction in Johnson v. Mason Lodge, the penal features of the statute remained undisturbed and furnished full notice to the corporation that it must comply with the statute or subject itself to the penalty imposed. Under these circumstances it does not lie in the mouth of the Oliver Company to say that, acting on the faith and credit of the Johnson case, it did not know it was necessary that it should observe this statute. In entering into this contract the Oliver Company was undeniably guilty of violating a law of this State that has been enforced in many cases, and it is not in a position to set up that this court ought not now to overrule the Johnson case.

We have examined a large number of cases on the subject of *stare decisis*, and in no one of them can there be found an attempted application of it to a state of facts such as are here presented. In every instance, so far as our investigation goes, where the doctrine has been applied, the decisions relied on furnished in themselves a line of authority that left no notice that anything else was required.

But aside from this, the doctrine of *stare decisis* is not without its limitations. A court of last resort is not irrevocably bound to follow opinions that in the light of present circumstances and conditions seem to be erroneous, and this case furnishes a good illustration of the necessity for a departure from the rule. Here we have a statute of the state enacted pursuant to the Constitution for the purpose of carrying out a wise public policy, an important feature of which was eliminated by the decision in Johnson v. Mason Lodge, and upon mature consideration we do not feel bound to follow this decision. In overruling it we are not without ample precedents furnished not only by the decisions of other courts but of this court. This court in the course of its history has deemed it wise and proper to overrule many cases, numbers of them relating to property rights, as may be seen by an examination of volumes two and four of Barbour's Digest, under the head of "Overruled Cases." A few of them may be mentioned:

In Montgomery County Fiscal Court v. Trimble, 104 Ky., 629, in overruling several previous cases, we said: "When a question involving important public or private rights, extending through all coming times, has been passed upon on a single occasion, and which decision can in no just sense be said to have been acquiesced in, it is not only the right, but the duty of the court, when properly called upon, to re-examine the questions involved, and again subject them to judicial scrutiny. We are by no means unmindful of the salutary tendency of the rule of *stare decisis;* but at the same time we cannot be unmindful of the lessons furnished by our own consciousness, as well as by judicial history, of the liability to error and the advantage of review."

In Hall v. Martin, 89 Ky., 9; and Breathitt Coal, Iron & Lumber Co. v. Strong, 106 Ky., 699, the case of Hamilton v. Fugett, 81 Ky., 366, was in effect overruled, although the overruling opinions unsettled extensive property rights acquired on the faith of the Fugett opinion.

True it was not expressly overruled, but it was effectually disposed of by being explained away in the cases mentioned, a process of elimination sometimes adopted to remove undesirable opinions.

Another case affecting property rights was Sheets v. Grubbs, 4 Met., 305, decided in 1863; but this case, after standing for many years and being followed in several cases, was overruled in Chenault v. Chenault, 88 Ky., 83. Yet another example is found in the Bank tax case reported in 102 Ky., 174.

In Victor Cotton Oil Co. v. City of Louisville, 149 Ky., 149, the case of Mengel Box Co. v. City of Louisville, 117 Ky., 735, was overruled, although on the faith of the exemption from taxation it afforded the Victor Cotton Oil Co. was, as it claimed, induced to establish its plant in the city of Louisville. Having thus been induced to act on the authority of the Mengel case, the Cotton Oil Co. insisted that its right to the exemption ought not to be defeated, but Chief Justice Hobson speaking for the court said:

"It is insisted, however, that the facts here shown bring the case directly within the doctrine laid down in Mengel Box Co. v. City of Louisville, 117 Ky., 735. This seems to be true, but that case is out of line with the subsequent cases, and with what seems to us the proper construction of the Constitution and the Statute." To the same effect is Pratt v. Breckinridge, 112 Ky., 1.

In 26 American & English Ency. of Law, page 183, we find this sensible statement of the limitations upon the rule of *stare decisis*: "This doctrine is not an arbitrary rule of positive law which forbids the questioning, under any circumstances, of all decisions or the exercise of judicial discretion in relation thereto, but is subject to reasonable limitation. * * * No prior decision is to be reversed without good and sufficient cause, yet the rule is not in any sense iron-clad, and the future and permanent good of the public is to be considered rather than any particular case or interest. Even if the decision affects real-estate interests and titles, there may be cases where it is plainly the duty of the court to interfere and overrule a bad decision. Precedence should not have an overwhelming or despotic influence in shaping legal decisions. * * * The benefit to the public in the future is of greater moment than any incorrect decision in the past. Wherever a correction can be made without working more harm than good, it should be

done. * * * Where vital and important public or private rights are concerned, and the decisions regarding them are to have a direct and permanent influence in all future time, it becomes the duty as well as the right of the court to consider them carefully and to allow no previous error to continue if it can be corrected. The foundation of the rule of *stare decisis* was promulgated on the ground of public policy, and it would be an egregious mistake to allow more harm than good to accrue from it.''

It is further insisted by counsel for the Oliver Company that this court in construing section 571 in Johnson v. Mason Lodge declared that a failure to comply with this statute did not affect the validity of a contract made by the delinquent corporation or prohibit it from enforcing the contract, and that as the contract between the Oliver Co. and the Louisville Realty Association was entered into subsequent to this opinion and while it was standing unaffected as the law of the land, this court is not now at liberty without impairing the obligations of a contract to overrule the Johnson case so as to affect the validity of the contract here in question.

In support of this position our attention is called to Gelpcke v. Dubuque, 68 U. S., 175, 17 L. Ed., 520. In that case the court said: ''The sound and true rule is, that if the contract, when made, was valid by the laws of the State as then expounded by all departments of the government, and administered in its courts of justice, its validity and obligation cannot be impaired by any subsequent action of legislation, or decision of its courts altering the construction of the law.''

And to Douglas v. Pike County, 101 U. S., 677, 25 L. Ed., 968, where the court said: ''As a rule we treat the construction which the highest court of a State has given a statute of the State as part of the statute and govern ourselves accordingly. * * * The true rule is to give a change of judicial construction, in respect to a statute, the same effect in its operation on contracts and existing contract rights that would be given to a legislative amendment; that is to say, make it prospective, but not retroactive. After a statute has been settled by judicial construction, the construction becomes so far as contract rights under it are concerned, as much a part of the statute as the text itself, and a change of decision is, to all intents and purposes, the same in its effect on contracts as an amendment of the law by means

of a legislative enactment.'' To the same effect is Havemeyer v. Iowa Co., 70 U. S., 294, 18 Law Ed., 38; Pine Grove Township v. Talcott, 86 U. S., 661, 22 Law Ed., 1226.

We entirely concur in the right and justice of the rule announced in these cases and fully agree to its soundness when properly applied, but we think it should have no application to the facts of this case. In the cases mentioned and the others we have examined, it was used to protect innocent and law observing parties who in good faith had made investments in securities upon the faith and credit of opinions of courts of last resort. The parties invoking the protection of the rule did not, in making the contracts sought to be declared void by subsequent decisions, violate any law of the State. They appeared before the court with clean hands asking relief from decisions the effect of which was to deprive them of property in which they had been invited to invest not only by the laws of the State, but by the opinions of its highest court in construing them.

Here the situation is quite different. The Oliver Company comes before the court a confessed violator of the laws of the State. It is asking relief from a condition resulting from its deliberate and willful violation of a penal statute. It is not in a position to ask the protection of beneficial rules of law intended to save from loss law-observing citizens. We put our decision, that the Oliver Company is not entitled to the protection afforded by the principle announced in these cases and invoked in its behalf, upon the ground that it brought upon itself all the trouble it seeks to escape by making the contract now in question, in violation of an express penal statute of the State that was in full force and effect at the time the contract was made and that it was fully advised of, if its other pleas heretofore noticed are true, and that it was obliged to take notice of whether it had actual notice or not.

For the reasons stated the opinion in Johnson v. Mason Lodge, and the others that follow it, is overruled, and the judgment appealed from is affirmed. Whole court sitting. Chief Justice Hobson and Judge Nunn dissenting.

DISSENTING OPINION BY CHIEF JUSTICE HOBSON.

Two questions arise in this case:

1. Did the court err in its conclusion as to the construction of section 566, Ky. Stats., in Johnson v. Ma-

son Lodge, 106 Ky., 838; Altman & Co. v. Mead, 109 Ky., 583, and Hallam v. Ashford, 24 R., 870?

2. Can the court now under its own rulings properly depart from the construction of the statute it then adopted, the Legislature having acquiesced in that construction?

1. In Johnson v. Masonic Lodge, the corporation had not complied with section 571 Ky. Stats. Johnson had borrowed money from it and when sued for the money relied on the violation of section 571 by the corporation in bar of a recovery. The circuit court sustained a demurrer to his answer which was practically the same as the answer in this case. In the opinion delivered by this court, after stating the facts the court quotes section 194 of the Constitution and sections 571 and 566, Ky. Stats. It then proceeds in a lengthy opinion to show that under section 566, a person by executing a note to a corporation "is estopped to deny its existence or authority to do business at that time." The other two cases follow and reaffirm this decision; and in the last case it is stated that the question has been repeatedly before the court and had been decided the same way; though it would seem that it was not noticed in the opinions being deemed settled by the previous adjudications. These cases being based upon section 566, Ky. Stats., in no manner conflict with Lindsey v. Rutherford, 17 B. Mon., 245; Franklin Ins. Co. v. Packet Co., 9 Bush, 590; Van Meter v. Spurrier, 94 Ky., 22, or Smith v. Robertson, 106 Ky., 472, or other like cases for the reason that the statute under which those cases were decided contained no such provision as is set out in section 566. The opinion proceeds on the ground that the equitable doctrine of estoppel does not apply. This may be conceded, but the question turns on section 566 and not on equitable estoppel. So the question recurs was the court right in the construction it then gave section 566. That section and section 571 are parts of the same act, the work of the same Legislature and the two must of course be read together. Section 566 is as follows:

"No corporation organized under this chapter shall be permitted to set up or rely upon the want of legal organization as a defense to any action against it; nor shall any person transacting business with such corporation, or sued for injury done to its property, be per-

mitted to rely upon such want of legal organization as a defense.''

It is now insisted that the words ''want of legal organization'' refer only to the filing of the articles of incorporation, the election of officers and the like. Is this the natural meaning of the words in the connection in which they are used in this section? In Words & Phrases, Vol. 5, defining the words ''organize'' and ''organization'' in reference to corporations it is said: '' 'Organize' and 'organization,' as used in reference to corporations, has a well understood meaning, which is the election of officers, providing for the subscription and payment of the capital stock, the adoption of by-laws, and such other steps as are necessary to endow the legal entity with the capacity to transact the legitimate business for which it was created.''

It will be observed that this is precisely the definition of the terms which this court adopted in the cases referred to, and if we insert this definition in scetion 566, it will read as follows:

''No corporation organized under this chapter shall be permitted to set up or rely upon its want of capacity to transact the legitimate business for which it was created, as a defense to any action against it, nor shall any person transacting business with such corporation, or sued for injury done to its property, be permitted to rely upon such want of capacity to transact the legitimate business for which it was created.''

In Black's Law Dictionary, the word ''organization'' is not given, but among the definitions of ''organize'' are these:

''To put into working order; to arrange in order for the normal exercise of its appropriate functions.''

A corporation is not put into working order until it has capacity to do business. It is not arranged in order for the normal exercise of its appropriate functions until it is lawful for it to make contracts. It is true that appellant is a foreign corporation, but as such, it had no legal existence outside of the State creating it. The exercise of any' power in another State depends upon the will of that sovereignty. (Lathrop v. Commercial Bank, 8 Dana, 114.) By section 202 of our Constitution foreign corporations coming into this State must do business on conditions not more favorable than are prescribed by law to similar corporations organized under the laws of the Commonwealth. So when foreign

corporations come into the State, they must comply with
our laws, and have no right to do business or legal ex-
istence here, except by virtue of our laws.   When they
do this as has been frequently held, they stand on the
same plane as similar corporations created under the
laws of the State.   If, as is uniformly held, appellant
had no legal existence as a corporation in this State until
it complied with our laws giving it a right to do business
here, how can it be maintained under any meaning of
the word "organization" that it is not within the pro-
visions of section 566?

Under section 571 it was not "lawful for any corpor-
ation to carry on any business in this State" until it
complied with that section; and, therefore, no corpora-
tion had capacity to do business in this State, until it
complied therewith.   The defense here made is simply
that the corporation had not capacity to do business be-
cause it had not complied with section 571; and this
defense under section 566 a person transacting business
with the corporation cannot make.   Section 460 Ky.
Stats., which is the work of the same Legislature regu-
lating the construction of statutes, provides as follows:

"All words and phrases shall be construed and
understood according to the common and approved
usage of language, but technical words and phrases, and
such others as may have acquired a peculiar and appro-
priate meaning in the law, shall be construed and under-
stood according to such meaning."

The word "organization" having acquired a peculiar
and appropriate meaning in the law, the court in the
cases referred to properly gave it that meaning.

But looking beyond the letter of the statute to its
purpose and intent, what reason could the Legislature
have had for making section 566 apply only to irregu-
larities in the steps taken prior to the filing of the papers
in the office of the Secretary of State, as required by sec-
tion 571, and not including this step also?   By section
460, Ky. Stats., it is also provided as to this revision
that its "provisions are to be liberally construed with
a view to promote its objects."

In Bailey v. Commonwealth, 11 Bush, 691, this court
said that "every statute ought to be expounded not ac-
cording to the letter, but according to the meaning."
In Sams v. Sams, 85 Ky., 400, it is said that "the rea-
son for the enactment must enter into its interpretation

so as to determine what was intended to be accomplished by it.''

Can any one believe that a body of practical men intended by section 566 to protect a corporation that had not the necessary number of incorporators or the necessary stock subscription, or that it had not paid its organization tax, and did not intend it to protect a corporation that was not qualified to do business because it had not filed a certain paper in the office of the Secretary of State? Section 571 applies alike to domestic as well as foreign corporations and section 566 must also apply to all alike. Much of the business of the State is now done by corporations. Mistakes are sometimes made by the most careful men; papers sent by mail sometimes do not reach the Secretary of State; and sometimes one officer is under the impression that another has performed this duty or that required by the statute. So section 566 was inserted for the protection of the capital invested in these enterprises. It only validates the contract as between the parties to it. When we construe the statute liberally with a view to promote its objects how can it be thought that section 566 only refers to defects in the articles of incorporation and the like? What was its purpose? Manifestly to prevent injustice and to prevent those who had done business with the corporation from taking advantage of the corporation's want of capacity to do business. The words employed in section 566 show the Legislature had this in mind. In the first place it provides that the corporation shall not make this defense. If we turn this case, around, and the owner of the house was here suing the contractor for not building the house properly, would there be any doubt that under section 566 the corporation could not make this defense although both parties made the contract knowing the facts? And if the first part of the section would cut off the corporation from making that defense, upon what principle can it be maintained that the last clause of the sentence is narrower in its application than the first clause? Not only so, but the second clause deals with the person who has transacted business with the corporation, and in that clause manifestly the Legislature has in mind business done by the corporation, and provides that this defense shall not be allowed in favor of the men who have done business with the corporation. There may be cases in which the word ''organize'' is given a narrower meaning, where only

the life of the corporation is in issue; but this section is dealing with the transaction of business by the corporation, and manifestly uses the words "legal organization" in the sense of capacity to do business. The court entirely overlooks in section 566 the words "or sued for injury done to its property." Can anybody believe that the legislature intended this protection to the property of a corporation only in cases where there was some defect in the steps taken to form the corporation? Is there any reason why the property of such a corporation should be protected from wanton injury that would not apply to a corporation that had not complied with section 571? Would anybody hold that a trespass committed upon the property of a corporation before it had complied with section 571, would be without redress when it complied with the section before bringing suit? Does anybody believe that the legislature intended that the defendant here could with impunity have appropriated to its own use the property of the plaintiff because it had not complied with section 571? The plain purpose of section 566 was not to leave corporations without remedy in the two classes of cases indicated, although they had failed to comply with some provision of the statute, and could not lawfully do business as a corporation.

The Kentucky cases above referred to are cited in Thompson on Corporations, section 6710, where he says:

"Not a few courts have applied the general doctrine of estoppel to persons dealing with foreign corporations. And the rule established by these courts is that a person who has contracted with a foreign corporation that has not complied with the statute authorizing it to transact business in the State, will be estopped in any action by it on such contract, from setting up the fact that it had not complied with the statute."

In 19 Cyc, 1297, after showing that in some States where they had no such statute as section 566 the contracts of the corporation have been held not enforceable, it is said:

"In some States the courts have held, contrary to the doctrine hereinbefore stated, that where a person enters into a contract with a foreign corporation, and receives the benefit of such contract, he is estopped to set up the fact that the corporation had not complied with a statute of the State imposing conditions upon its

right to do business therein, for the purpose of avoiding liability on the contract.''

In support of this statement, decisions are cited from Arkansas, Colorado, Idaho, Iowa, Massachusetts, Missouri, Montana, New Hampshire, Ohio, Rhode Island, Washington, West Virginia, Kentucky, North Dakota, South Dakota, and in the annotations for 1914 a number of other cases to the same effect are cited.

Section 194 of the Constitution requires all corporations carrying on business in this State to have one or more known places of business in this State, and an authorized agent upon whom process may be executed. But this has no application to the case at bar, for a violation of this section is not shown. The General Assembly to carry into effect the constitutional provision enacted sections 566 and 571. What regulations should be made was a legislative question.

It is said that the construction of the statute adopted by the court makes it vain and elusive. Other penal statutes are not vain and elusive because the penalties affixed for their violation are the means relied on for their enforcement. If experience has shown that the statute as construed by the court is vain or elusive, it must be presumed that the legislature, coming biennially from the people, would have afforded a remedy. When they have not done this and no officer of the State has complained, by what authority is it said that the statute is vain and elusive? The General Assembly met in the year 1900, a few months after the decision in the Johnson case was rendered, and when the matter was fresh in everybody's mind. It not only took no action, but the subsequent General Assemblies, meeting biennially, have acquiesced likewise in the court's construction of the statute. The dockets of this court show that the statute is not vain and elusive; for the officers of the State have not been remiss in prosecutions under the statute to obtain the fines it provides for. It is a highly penal statute. Not only the corporation may be fined, but every officer or agent doing any business, and the corporation can enforce no civil right by action except as provided by section 566. The Chatterson case, where a contractor who had built a street was refused relief, illustrates the fact that the statute is not vain and elusive. Must it not strike any justice-loving man as a travesty on justice that a person may borrow of a corporation $20,000 and when asked to pay it, snap his fin-

gers in the creditor's face, and say: "I will keep your money, because you did not file a statement in the office of the Secretary of State, as required by law, before you lent me the money and took my note for it?" Must it not strike any justice-loving man as a travesty on justice when the owner of property who, as here, is sued by the contractor for $20,000 for building him a house, says: "I have the house and you can do without your money, because you had not complied with section 571, Ky. Sts.?" Is it any wonder that the representatives of a justice-loving constituency like the people of Kentucky put such a section as 566 in the statutes to prevent such injustice as this? And is it any wonder that when the statute they made was thus construed by the court, the representatives of such a people acquiesced in the construction of the court and made no effort to change the statute? A change of the statute by the legislature and a change of its construction by the court are very different things. When changed by the legislature the change operates only on the future, and people have notice of it; a change by the court, as in this case, operates on the past and destroys rights contracted innocently upon the faith of the decisions of the court.

It is true that in some States where the statute expressly provided that contracts made in violation of it should be void; and in others where the contract was simply declared unlawful, the courts have enforced the statute while acknowledging its hardship, saying that it was a legislative question. Such is the rule in Pennsylvania, Alabama, Tennessee, Wisconsin, Michigan, Minnesota and Oregon. But in no case has this been done where the court did not recognize that justice had been defeated. In view of these things, how can it be maintained that the construction which is now given section 566 construes the statute liberally with a view to promote its purposes?

2. The second question comes to this: Is the construction of a statute settled by a line of decisions of this court, or is it never settled until settled right in the eyes of those who are judges of this court when the case reaches here? Does the obligation of contracts depend upon the law as officially promulgated at the time the contract was made, and may it be impaired by a subsequent change in those laws by judicial construction?

The purpose of establishing this court is primarily that justice may be administered and that the laws of

the State may have a uniform operation. To this end the opinions of this court are published as the authoritative exposition of the laws. When the court has construed a statute and that construction has been adhered to in a line of cases, it has been the settled policy of the court not to depart from it. In South v. Thomas, 7 T. B. Mon., 62, where the court was urged to overrule previous decisions construing a statute, it said:

"It has been often said that it is not so important that the law should be rightly settled, as that it should remain stable after it is settled. This is true, for attempts to change the course of judicial decision, under the pretext of correcting error are like experiments by the quack upon the human body."

In Trimble v. Taul, 7 T. B. Mon., 445, where members of the court differed in opinion as to the correctness of the previous decisions construing a statute, the court said:

"If we were convinced that on this point the law was settled wrong originally, we should not feel ourselves at liberty to depart from it; aware that it is of greater importance to society that the rule should be uniform and stable, than that it should be the best possible rule that could be adopted. In the supreme court of a State, as this is, possessing, with but few exceptions, appellate judicial power co-extensive with the State, the influence which its decisions must have is evident. Its mandates are conclusive, and even its *dicta* in all the inferior courts. No sooner is a decision published than it operates as a pattern and standard in all other tribunals, and as a matter of course, all other decisions conform to it. If in this court a settled course of adjudication is overturned, then the trouble and confusion of reversing former causes succeeds in the inferior tribunals; and even the credit and respect due to this court is shaken by the phenomenon that A has lost his cause on the same ground that B gains his. And not only do these consequences follow, but evils still more serious may ensue. For perhaps no court may strike the vitals of society with a deeper wound than a capricious departure in this court from one of its established adjudications."

In Maddox v. Graham, 2 Met., 56, where a like question was passed upon, the court said:

"If this court were now to overrule its former decision, it would be an inconsistency as gross in form and manifestation, as unjust in its consequences."

In McChesney v. Hager, 31 R., 1039, the court, after pointing out that if the question was a new one, it would give the statute a different interpretation, said:

"But we do not feel disposed to overrule the opinion of this court in the case *supra*. Since that case was handed down there have been four regular sessions of the legislature, and if the constructions given to these statutes was not the one intended by the legislative department, it is fair to assume that the statute would have been so amended as to make effective for the purpose of the legislature in the enactment of these laws, and give to the Secretary of State the additional salary now insisted upon."

Further on in the opinion the court said that "in construing the statutes interpreted they must be read in connection with the opinion of the court, and, in fact, the opinion becomes in effect a part of the statute binding upon all persons asserting rights under it or whose interests are affected by it."

These rules are of universal application. In Commissioners v. Harrison, 7 H. L., 9, Lord Cairns said:

"I think that with regard to statutes   *   *   *   it is desirable not so much that the principle of the decision should be capable at all times of justification, as that the law should be settled, and should, when once settled, be maintained without any danger of vacillation or uncertainty."

In Sutherland on Statutory Construction, 485, it is said:

"A judicial construction of a statute becomes a part of it, and as to rights which accrue afterwards it should be adhered to for the protection of those rights. To divest them by a change of the construction is to legislate retroactively."

It is now nearly fifteen years since the decision of this court in the Johnson case was rendered. In the meantime, and while that decision was acquiesced in by all three departments of the State government, a large part of the business of the State has been done by corporations. Thousands of dollars have been lent or invested in the building of railroads or other structures upon the faith of these decisions under contracts which were valid under the law as then expounded and which

are now declared invalid under a different construction of the statute.

The Chatterson case is rested on the ground that there was no estoppel, the defendant there not being a party to the contract. The point decided is not inconsistent with the prior cases. While the court has often overruled a single case especially where it was inconsistent with subsequent decisions, it has never overruled two reported cases on the construction of a statute after they "had been followed in quite a number of subsequent decisions." None of the cases cited go as far as the decision now made and none of them in the slightest degree sustain the action of the court in this case.

It is submitted that nothing so unwarranted has ever been done by this court before as to overrule repeated decisions construing a penal statute and adding greatly to its penalties, when those decisions have been acquiexceed in by the legislature. It is to the interests of all that the law should be settled. The uncertanty of the law has passed into a proverb, but how infinitely more uncertain it must be when reliance cannot be placed upon the decisions of the highest court in the State. Our docket is now overburdened with cases in which this or that precedent is sought to be overruled; and certainly it is a sound principle that the law as settled shall remain settled.

Manifestly if the legislature, after the decision of the cases referred to, had amended section 571 and provided as in a number of other States, that contracts made in violation of it should be void, this act could not have the effect to invalidate contracts made before it was passed and which were valid under the statute as it then stood. Can a court of justice consistently, if it has the power, by a retroactive decision, invalidate contracts which were valid under the law as it stood when they were made? Aside from the Federal question, it is submitted that no court in administering justice can consistently do such injustice.

In 26 Am. & Eng. Ency. of Law, 179, it is said:

"But after a statute has been settled by judicial construction, the construction becomes, as far as contract rights acquired under it are concerned, as much a part of the statute as the text itself, and a change of decision

is, to all intents and purposes, the same in its effect on contracts as an amendment of the law by means of a legislative enactment, and contract obligations entered into or vested rights acquired while the former decision was in force cannot be impaired."

A number of decisions of the United States Supreme Court and the State courts are cited in support of the text, and a number of other cases are given in the brief for appellant. It is said that these cases have no application for the reason that it was unlawful for the corporation to do business, and that it cannot avail itself of the constitutional provision in an illegal act. But it will be observed that a number of cases cited were just such cases as this. If the contract was valid under the law in existence as it stood when it was made, and is invalid under the law as it is now declared, has not the obligation of the contract been impaired? In Ohio Ins. Co. v. Debrot, 16 Howard, 416, the United States Supreme Court said:

"The sound and true rule is that if the contract when made was valid by the laws of the State, as then expounded by all the departments of its government and administered in its courts of justice, its validity and obligation cannot be impaired by any subsequent act of the legislature of the State or decision of its courts altering the construction of the law."

The argument that the obligation of the contract may be impaired by a change in the court's ruling because the transaction was unlawful, assumes the point in issue. To illustrate, the court by its former decisions read section 566 into section 571; so that that section, when read with section 566, meant that contracts made in violation of it might be enforced against the party doing business with the corporation. If these words had been inserted by the legislature in section 571, and a subsequent act had stricken them out, would it be contended that the effect of the subsequent act was to invalidate contracts already made? And if the legislature could not do this, how comes it that the court has any greater power when the limitation of the Federal constitution is that the State shall not impair the obligation of a contract? Certainly it must be admitted that a contract that was valid under the law as it stood when it was made according to the construction then given

it by this court is now held invalid. If this is not to im--pair the obligation of a contract, what is it?

For these reasons I dissent from the opinion of the court. Judge Nunn concurs in this dissent on the second question.